(27 Misc. Rep. 439.)

PEOPLE ex rel. O'BRIEN v. VAN WYCK et al.

(Supreme Court, Special Term, New York County. May, 1899.)

1. MUNICIPAL OFFICERS—LABOR LAW—CONSTRUCTION.
    Commissioners appointed under Laws 1895, c. 789, providing for a commission to construct a suspension bridge over East river in New York City, are municipal officers, within the meaning of Labor Law (Laws 1897, c. 415) § 4, imposing certain penalties upon public officers for their violation of the law.

2. DUTIES OF OFFICERS.
    Municipal officers and agents, having general charge of public improvements, and power to contract therefor, are bound to investigate complaints against contractors for public works, charging violation of Laws 1897, c. 415, known as the "Labor Law," regulating the hours of labor and wages of laborers employed on public works.

3. MANDAMUS—PROCEEDINGS BY PRIVATE CITIZEN.
    A citizen can maintain a proceeding by mandamus to compel public officers to perform the duties imposed upon them by Laws 1897, c. 415, known as the "Labor Law," although he has no personal interest therein.

Original motion, on the relation of William J. O'Brien, for a writ of mandamus against Robert A. Van Wyck and others, commissioners. Motion granted.

Victor J. Dowling, for relator.
John E. Brodsky, for P. Ryan.
John Whalen, Corp. Counsel, for commissioners.

SCOTT, J. The defendants constitute a commission, appointed under the provisions of chapter 789 of the Laws of 1895, for the purpose of constructing a permanent suspension bridge over the East river, between those portions of the city of New York which were formerly the cities of New York and Brooklyn. The duties of the commissioners comprise the preparation and adoption of plans for the bridge, the execution of contracts therefor, and the supervision of the work thereunder. All the cost and expense of constructing the bridge are to be met and paid by the city of New York out of the proceeds of bonds. The bridge, when completed, is to be a public highway, in the charge of the municipal authorities. Among the contracts en-

tered into by the defendants was one for the construction of the anchorages of the bridge, which are to consist mainly or largely of granite.     It is claimed by the relator that the contractors for these anchorages have persistently violated certain provisions of the labor law (chapter 415, Laws 1897), and he applies for a writ of mandamus, commanding the defendants to hear and investigate the charge of such violation, and, if the same is proven to their satisfaction, to take appropriate action thereon.

At the time the above-mentioned contract was executed there were in force two acts,—one (chapter 385, Laws 1870) making eight hours a legal day's work for laborers, mechanics, and workingmen employed by the state or a municipal corporation or a contractor for public works; and the other (chapter 622, Laws 1894) providing that all mechanics, workmen, and laborers employed on any public work shall receive not less than the prevailing rate of wages in the respective trades and callings in which they are employed in said locality, and that every contract thereafter made by the state or any municipal corporation for the performance of public work must comply with the requirements of the statute.     The contracts for the bridge anchorages contain clauses requiring the contractors to comply with the foregoing statutory requirements.     The above-quoted provisions of law were incorporated into the labor law (chapter 415, Laws 1897). Section 3 of that act provides that eight hours shall constitute a legal day's work for all classes of employés in this state, except those engaged in farm and domestic labor, unless otherwise provided by law, and that the wages for public work shall not be less than the prevailing rate for a legal day's work in the same trade or calling in the locality where the work is performed.

It appears that a number of complaints have been made to the defendants that the contractors for the anchorages habitually violated the foregoing provisions of the labor law.     On January 5, 1899, by a resolution of the commission, the relator and his counsel were invited to appear before the commission.     Accordingly, on January 16th, the relator and his counsel and one of the members of the contracting firm appeared, and each apparently made statements concerning the complaints.     On the same day the commission referred the whole subject to the corporation counsel for his advice and opinion thereon.     On February 3, 1899, an opinion was received from the corporation counsel, in which he advised that:

"It would seem to be the safer and better course for the commission to wait, and let the complainants take the case to the court, and abide the decision of the court, rather than to take any action at the present time in regard to declaring the contracts canceled by reason of the acts of the contractors said to be in violation of the statutes of the state."

The commission resolved to follow this advice, and on February 6, 1899, advised the relator that they could take no action relative to the complaints.

I think that it was the duty of the defendants to entertain and investigate the complaints.     The labor law seems very clearly to cast this duty upon them, and, in fact, if they refuse to act, the law would become a dead letter, and wholly ineffective.     By section 4 of the act,

the penalty imposed upon a contractor for public work, in case he fails to comply with or secretly evades the provisions of the statute, is the forfeiture of his contract, at the option of the state or municipal authorities, and this appears to be the only penalty which the law does provide. So far as the East River Bridge is concerned, the defendants are the municipal authorities contemplated by the act, and, unless they are willing to exercise the power placed in their hands, the law will never be enforced. The very same section imposes upon any officer or agent of the state, or of a municipal corporation, who openly violates or otherwise evades the provisions of the statute the extreme penalty of removal from office; and, while refusal to act upon a charge of violation of the statute by a contractor might not amount to open violation or evasion of the provisions of the law, yet the very severity of the penalty imposed by the legislature implies an intention that the statute shall be strictly enforced. It is to be observed, also, that the obligation to pay the prevailing rate of wages is an integral and important part of the contract, and a provision thereof with which, like every other provision, it is the duty of the commissioners to compel compliance. If a contractor be honest, and inspired with an intention to obey the law, it would be quite impossible for him to compete in bidding for the contract with one who is willing to take the chance of inaction by the commissioners, or who may believe that he can induce them to close their eyes to his evasions of his statutory and contract obligation. That the duty of the commissioners is to entertain and examine into complaints of this character was distinctly held by the attorney general of this state, in an opinion rendered to the commissioners of the Eastern Reformatory, under date of November 14, 1896, wherein he wrote:

"It is a reasonable inference, and not a violent one, that officers having a general superintendence of the improvement to property, and power to contract therefor, have also imposed upon them the duty of seeing to it that the contract is complied with, and not in any manner evaded. It is the duty of the contractor, under the laws of the state and his contract, to pay the prevailing rate of wages in the locality. To ascertain the fact is, in my judgment, part of your duty as commissioners. The failure of the contractor to comply with the law and the terms of his contract, in my judgment, amounts to a breach thereof. While, as the result of a misinterpretation of the law upon the part of the contractor, it might not be reasonable to cancel or annul the contract, yet I have no doubt of the commissioners' power to do it. If the contractor, after advice by your commission of a violation, should insist upon such a course of conduct, it is my judgment that it would be your duty to terminate it."

I have quoted thus at length from the opinion of the attorney general, because it accords with and well expresses my own views as to the meaning and effect of the statute. As to whether the relator establishes a case of violation I express no opinion. That is a matter for the commissioners to determine, upon such evidence as may be submitted to them; but of their duty to investigate the charges, and act upon them, if established, I entertain no doubt. What action they should take is a matter resting in their discretion.

A question is suggested as to the right of this relator to maintain this proceeding. Ordinarily, and when the remedy by mandamus is resorted to for the purpose of enforcing a private right, no person

can invoke the remedy as relator unless he appears to have a personal interest in having the right enforced. The relator has no such personal interest. He is not in the employ of the contractors, nor has he, so far as appears, ever applied to be employed, at the prevailing, or any other, rate of wages. He describes himself as a citizen of the United States, and a resident and householder in the city of. New York, and a representative of the New York branch of the Granite Cutters' National Union. Of course, his relation to the union adds nothing to his legal right to proceed by mandamus, although it is doubtless owing to that relation that he has become interested in the subject. He has no private right to be enforced, and no personal grievance to be corrected, and the question is therefore presented whether a citizen, having no interest in the question other than that which is common to all citizens, can maintain a proceeding by mandamus to compel public officers to perform a duty imposed upon them by the statute known as the "Labor Law."

There has been much diversity of opinion in this country whether a private person can sue out a writ to enforce the performance of a public duty, unless the nonperformance of it works a special injury to him; but the decided preponderance of authority is in favor of the doctrine that a private person may move for a mandamus to enforce a public duty, not due to the public as such, without the intervention of the attorney general, and without showing a personal grievance to be righted. Railroad Co. v. Hall, 91 U. S. 343, 355, and cases cited. Such has been the rule in this state since the case of People v. Collins, 19 Wend. 56, which was decided in 1837. In that case Judge Cowen, after exhaustively reviewing the precedents in this state and in England, held that, in the case of the refusal of public officers to perform a public duty imposed upon them by law, "the wrongful refusal of the officers to act is no more the concern of one citizen than another, like many other public offenses. It is, at least, the right, if not the duty, of every citizen to interfere, and see that a public offense be properly pursued and punished, and that a public grievance be remedied." In my opinion, the case here presented falls within the principle thus established. In one sense, the immediate effect of the labor law, when enforced, is to benefit certain individuals; yet I am not prepared to believe that such was the only, or even the principal, reason for its enactment. On the contrary, it appears to have been adopted by the legislature because, in the judgment of that body, the general welfare of the community would be advanced and assured by establishing strict rules for the protection of that large section of the community who, by reason of their occupations and their necessities, were unable adequately to protect themselves. Whether all the provisions of the law are wisely designed is a matter to be determined by the legislature, not by the courts. The duty of the latter is to enforce its provisions. Certainly, the general enforcement of its requirements should go far towards avoiding conflict between those who employ and those who furnish labor, which, unless regulated by legislative authority, might often lead to such clashing of interests as would seriously threaten the peace and general welfare of the community. In this sense the statute is a public one, and the duties im-

posed by it upon public officers are public duties of the highest importance, in the performance of which every citizen has an interest.

The relator, therefore, is entitled, in my opinion, to pursue the remedy by mandamus. Indeed, if the duty could not be enforced at the instance of a citizen, there might be grave difficulties in the way of enforcing it at all. A person who had been employed at a less rate of wages than that prescribed by statute might find that the fact that he had voluntarily contracted to work for such reduced rate would stand in his way, if he applied for relief. No man has a right to demand that employment be given him at the statutory rate, or any other; and, even if he applied for work, and was refused, he could not found a plea of personal grievance upon such a refusal, because the contractor is at liberty to employ, or to refuse to employ, whom he will, without assigning any reason therefor. Of course, the mandamus can go no further than to require the defendants to entertain and examine into the complaints. As to what decision they should arrive at on the facts, or as to what action they should take when they have arrived at a decision, the court has no power to instruct them. Upon these questions their action is judicial, and the labor law itself leaves the abrogation of the contract, even if the charges be proven, optional with them.

I have not felt called upon to pass upon any question of fact as to whether the complaints are well founded. The only questions necessary to be considered upon this application are whether a complaint has been made, and whether the commissioners have entertained and acted upon it. Upon these questions the minutes of the defendants, verified by their secretary, present all the facts. There is, therefore, no dispute as to any material or pertinent question of fact. The motion for a peremptory mandamus must, therefore, be granted; its form to be settled on notice to the corporation counsel.

Motion granted.