In the Matter of MICHAEL CORRIGAN, Individually and as President of the Structure Maintainers and Structure Maintainer Helpers Association and for the Members Thereof Similarly Situated, et al., Appellants, against LAZARUS JOSEPH, as Comptroller of the City of New York, et al., Respondents.

Argued January 21, 1952; decided May 29, 1952.

*Roy P. Monahan, Sidney A. Fine, Bernard A. Abrashkin, Herman E. Cooper* and *Morris Weissberg* for James J. Connelly and others, appellants. I. Petitioners are laborers, workmen or mechanics upon public works whose right to compensation at the prevailing rate of wages is mandated by the Constitution and by the Labor Law. Workmen, laborers and mechanics cannot be deprived of this right by a resolution of a civil service commission, which purports to classify or grade them. The civil service provision of the Constitution and the classification provisions of the Civil Service Law as they affect workmen, laborers and mechanics apply only to their examination and appointment, and grant no power to administrative officials to fix their wages at less than the prevailing rate of wages. (*Matter of Smith* v. *Joseph,* 275 App. Div. 201, 300 N. Y. 516; *McKibbin* v. *City of New York,* 182 Misc. 671, 269 App. Div. 696, 295 N. Y. 592; *Austin* v. *City of New York,* 258 N. Y. 113.) II. The civil service and prevailing-rate-of-wages provisions of the Constitution, and the statutes which implement them, receive a construction which harmonizes and gives effect to each provision, by holding that the former apply to the examination and appointment of laborers, workmen or mechanics, while the latter govern their compensation. (*People ex rel. Balcom* v. *Mosher,* 163 N. Y. 32; *Reed* v. *McCord,* 160 N. Y. 330; *People ex rel. New York Inst. for Blind* v. *Fitch,* 154 N. Y. 14; *People* v. *Richter's Jewelers,* 291 N. Y. 161; *Matter of Tuschinsky* v. *City of New York,* 261 App. Div. 802; *Schwartz*

v. *Board of Educ. of City of N. Y.,* 209 App. Div. 738, 239 N. Y. 566; *McNulty* v. *City of New York,* 238 N. Y. 29; *Zuckerbrod* v. *Board of Higher Educ. of City of N. Y.,* 276 App. Div. 752.) III. Civil service commissions have no power or discretion to fix any range of compensation for the grade of a laborer, workman or mechanic but must leave that for determination of prevailing rates of wages by the comptroller under section 220 of the Labor Law. (*Matter of Beggs* v. *Kern,* 284 N. Y. 504; *Story* v. *Craig,* 231 N. Y. 33; *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92; *Matter of Sippel* v. *Dowd,* 191 Misc. 558, 274 App. Div. 1027; *Matter of Metropolitan Life Ins. Co.* v. *Boland,* 281 N. Y. 357; *Zuckerbrod* v. *Board of Higher Educ. of City of N. Y.,* 276 App. Div. 752.) IV. The so-called grading resolutions do not legally or effectually fix the rate of wages to which petitioners are entitled. (*People ex rel. Mehegan* v. *Scannell,* 28 Misc. 401; *Matter of Conklin* v. *Board of Child Welfare of City of N. Y.,* 254 App. Div. 837; *Matter of Burri* v. *Kern,* 180 Misc. 74, 266 App. Div. 841, 291 N. Y. 776; *Matter of Neary* v. *O'Connor,* 173 Misc. 696, 260 App. Div. 986; *Matter of Broderick* v. *City of New York,* 295 N. Y. 363.) V. Public interest and public policy require that the compensation of workmen and mechanics upon a municipally owned and operated transit system shall continue to be not less than the prevailing rate of wages, and forbid the reduction of their compensation by any device whatever. (*McAvoy* v. *City of New York,* 52 App. Div. 485, 166 N. Y. 588; *Austin* v. *City of New York,* 258 N. Y. 113; *Matter of Gaston* v. *Taylor,* 274 N. Y. 359; *Matter of Giannettino* v. *McGoldrick,* 295 N. Y. 208; *Matter of Carder Realty Corp.* v. *Andrews,* 242 App. Div. 892.)

*Samuel Resnicoff* for Michael Corrigan and others, appellants. I. The issue of grading is not within the scope of the hearings authorized by section 220 of the Labor Law. It was incumbent upon the comptroller to conduct an investigation, make a survey and thus complete a full and final record capable of being reviewed in an article 78 proceeding. (*Austin* v. *City of New York,* 258 N. Y. 113; *Meltzer* v. *Koenigsberg,* 302 N. Y. 523; *Raleigh Associates* v. *Henry,* 302 N. Y. 467; *Matter of Dairymen's League Cooperative Assn.* v. *Murtagh,* 274 App.

Div. 591, 299 N. Y. 634; *Evadan Realty Corp.* v. *Patterson,* 297 N. Y. 732; *Matter of Verdecanna* v. *Carey,* 285 N. Y. 130.) II. The comptroller's reliance upon the grading resolutions was illegal; the action was part of a plan and scheme to deprive appellants of the prevailing rate of wages. Appellants are entitled to prevailing rate of wages because of section 17 of article I of the State Constitution, regardless of grading. (*McNulty* v. *City of New York,* 238 N. Y. 29; *Matter of Smith* v. *Joseph,* 275 App. Div. 201, 300 N. Y. 516; *Matter of Flannery* v. *Joseph,* 300 N. Y. 149.)

*Denis M. Hurley, Corporation Counsel* (*W. Bernard Richland* of counsel), for respondents. I. Section 220 of the Labor Law neither by express terms nor by implication manifests an intention to disrupt normal civil service patterns and bring graded civil servants within its purview, nor was it ever intended to divest the civil service commissions of their basic statutory power and duty to classify positions into grades. The constitutional provision (art. I, § 17) upon which appellants rely is restricted in its application to the employees of contractors: it has no application to civil servants. (*Wood* v. *City of New York,* 274 N. Y. 155; *Matter of Beggs* v. *Kern,* 284 N. Y. 504; *People ex rel. Holleran* v. *Creelman,* 148 App. Div. 121; *People ex rel. Faiteute* v. *Creelman,* 148 App. Div. 890, 205 N. Y. 589; *People ex rel. Bacon* v. *Knox,* 71 App. Div. 306; *Matter of Brown* v. *Greene,* 269 N. Y. 45; *People ex rel. Strahan* v. *Feitner,* 49 App. Div. 101; *McKibbin* v. *City of New York,* 182 Misc. 671, 269 App. Div. 696, 295 N. Y. 592; *Matter of Kuhn* v. *Curran,* 294 N. Y. 207; *Matter of Carey* v. *Morton,* 297 N. Y. 361; *Matter of Broderick* v. *City of New York,* 295 N. Y. 363.) II. Long-established administrative practice and judicial construction have fixed in the law an interpretation which excludes graded competitive employees from section 220 of the Labor Law. The rejection of the scores of attempts which have been made to so amend that statute as to bring graded civil servants — and particularly appellants — within its purview manifests both a clear legislative recognition that appellants and other graded civil servants are outside section 220 and a determination that they shall so remain. (*Ferraiolo* v. *O'Dwyer,* 302 N. Y. 371;

*Story* v. *Craig,* 231 N. Y. 33; *Matter of Stupack,* 274 N. Y. 198; *Matter of Gilmore* v. *Preferred Accident Ins. Co.,* 283 N. Y. 92; *Beck* v. *Board of Educ. of City of N. Y.,* 268 App. Div. 644, 295 N. Y. 717; *Matter of Civil Service Tech. Guild* v. *La Guardia,* 181 Misc. 492, 267 App. Div. 860, 292 N. Y. 586; *Mulligan* v. *City of New York,* 194 Misc. 579, 275 App. Div. 795, 300 N. Y. 541.) III. The grading resolution under attack was promulgated by the municipal civil service commission. Instead of bringing an action against that body attacking the validity of the resolution, appellants brought a proceeding before the comptroller, entirely inappropriate to a consideration of the propriety of the municipal civil service commission's grading resolution. Appellants may not thus avoid direct attack by resorting to a collateral questioning of the propriety of the grading resolution. Even if the grading resolution was open to attack in this proceeding, its validity is abundantly established. (*Matter of Meenagh* v. *Dewey,* 286 N. Y. 292; *People ex rel. Huber* v. *Adam,* 116 App. Div. 613; *Matter of Benchin* v. *Kempner,* 143 App. Div. 125; *Matter of Hammond* v. *Ricker,* 140 App. Div. 19, 200 N. Y. 527; *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92; *Matter of Weeks* v. *Kraft,* 147 App. Div. 403, 205 N. Y. 585; *Matter of Kornbluth* v. *Reavy,* 261 App. Div. 60; *Hamilton* v. *Erie R. R. Co.,* 219 N. Y. 343.)

LEWIS, J. The petitioners-appellants are employed by the Board of Transportation of the City of New York in various capacities having to do with the maintenance and repair of facilities of the municipally owned subway, surface and elevated railway lines. The character of their work is manual and mechanical including carpentry, masonry, plumbing, welding, metal working and other skilled trades. Prior to July 1, 1938, the positions held by the petitioners were in ungraded services of the competitive class of civil service. In May, 1938, a resolution by the Municipal Civil Service Commission of the City of New York reclassified the petitioners' positions into a new " Part " in the graded service of the competitive class — " Part 39, The Rapid Transit Railroad Service " — and authorized the fixation of the maximum and minimum compensation of the grades of those positions at levels to be established by the

Board of Transportation and approved by the Municipal Civil Service Commission. Between 1936 and 1946 each of the petitioners had filed with the Comptroller of the City of New York a verified complaint demanding that an investigation pursuant to section 220 of the Labor Law be conducted and that the comptroller thereupon determine the prevailing rate of wages appropriate to positions held by the complainants. Thereafter, upon the petitioners' complaints, the comptroller conducted hearings as a result of which he found and determined that, since July 1, 1938, the petitioners had been classified as graded employees in the competitive class of civil service of the City of New York; that as such graded employees they could not successfully invoke the prevailing-rate-of-wages formula and incidental procedure prescribed by section 220 of the Labor Law and that in those circumstances the comptroller was without power to act in the proceedings. Thereupon the proceedings instituted by the complainants before the comptroller were dismissed by him.

Upon the present appeal, in five consolidated proceedings instituted by the petitioners under article 78 of the Civil Practice Act, we review an order of the Appellate Division — two Justices dissenting — by which the determinations of the comptroller dismissing verified complaints filed with him by the petitioners in proceedings pursuant to section 220 of the Labor Law were confirmed, and the present proceeding was dismissed. The dissent by two Justices of the Appellate Division was upon a phase of the case presently to be considered.

The question for decision is whether municipal employees in graded positions in the competitive class of civil service may obtain fixation of their wages by invoking the prevailing-rate-of-wages formula and incidental remedial procedure prescribed by section 220 of the Labor Law.

In considering the problem thus presented, our guide in the first instance must be the State Constitution. (*Hale* v. *Worstell*, 185 N. Y. 247, 253.) In section 17 of article I of that Constitution are to be found the following provisions: " * * * No laborer, workman or mechanic, *in the employ of a contractor or subcontractor* engaged in the performance of any public work, shall

be permitted to work more than eight hours in any day or more than five days in any week, except in cases of extraordinary emergency; nor shall he be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used. * * * " (Emphasis supplied.)

Although the appellants admit that they are not in the employ of a " contractor or subcontractor engaged in the performance of any public work ", it is their position that, being engaged in public work, they are entitled, under the constitutional provision (*supra*) to a wage not less than the rate of wages prevailing in the same trade or occupation in the locality where their services are performed.

We think the italicized portions of the constitutional provision as quoted above plainly limit the intended scope of that provision to employees of " a contractor or subcontractor engaged in the performance of any public work ". That the intended scope of the provision was thus definitely limited is clearly indicated by the following statement made on the floor of the Constitutional Convention of 1938 by a delegate who spoke for the Committee on Industrial Relations and Workmen's Compensation which had reported out the amendment then under consideration: " This amendment reads as follows, and I am reading on page 1, line 5, ' No laborer, workman or mechanic in the employ of a contractor or subcontractor '. Now, those words are vital. Unless the laborer, workman or mechanic is in the employ of a contractor or subcontractor, it does not apply." *

Concluding, as we do, that the limiting words employed by the framers of the constitutional amendment may not be disregarded, we pass to the appellants' further claim that, although they are incumbents of graded positions in the competitive class of civil service and accordingly are entitled to benefits attaching thereto, they are in addition entitled to the statutory benefits afforded by section 220 of the Labor Law.

That statute, in subdivision 3 thereof, provides: " The wages to be paid for a legal day's work, as hereinbefore defined, to

* 3 New York State Constitutional Convention of 1938, Revised Record, p. 2228.

laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages as hereinafter defined.''

The appellants contend that section 17 of article I of the Constitution (quoted *supra*) and other constitutional and statutory provisions governing civil service should be administered by the application of civil service rules to examinations and appointments in the employment of civil servants but that their compensation should be fixed in accord with the prevailing-rate-of-wages formula set forth in section 220 of the Labor Law. Such a practice, we think, would nullify and destroy the civil service grading system which has prevailed as an essential factor in the administration of the merit system in this State since the enactment of the first civil service law in 1883. (L. 1883, ch. 354; and see *Chittenden* v. *Wurster,* 152 N. Y. 345, 350.)

The basis for the grading system is the requirement of section 6 of article V (formerly art. V, § 9) of the Constitution which provides in part: '' Appointments and promotions in the civil service of the state, and of all civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive * * *. Laws shall be made to provide for the enforcement of this section.''

Among the statutes by which the Legislature has implemented the constitutional provision last quoted above is subdivision 1 of section 16 of the Civil Service Law which prescribes the following procedure for filling vacancies by promotion: '' Vacancies in positions in the competitive class shall be filled, as far as practicable, by promotion from among persons holding positions in a lower grade in the department in which the vacancy exists.'' The same section, by subdivision 7 thereof, also declares: '' For the purposes of this section an increase in the salary or other compensation of any person holding an office or position within the scope of the rules in force hereunder beyond the limit fixed for the grade in which such office or position is classified, shall be deemed a promotion.''

This court has repeatedly had occasion to consider the system by which positions in the civil service are graded. In *Matter of Sanger* v. *Greene* (269 N. Y. 33, 41) Judge HUBBS, writing

for the court, stated: " The duty of arrangement of offices in classes is delegated by the Legislature to the Commission [Civil Service Commission]. The classification as made by the Commission divides positions into grades according to salary range and specifies different positions with different titles within certain of the grades. The positions in a grade are placed by the Commission in different classes with duties varying in importance." Again, in *Slavin* v. *McGuire* (205 N. Y. 84, 90), it was said: " In performing this work of classification, the commissioners sought to carry into effect the provisions of the Constitution and of the Civil Service Law; which had in view the making of ' appointments and promotions in the civil service of the State and of all the civil divisions thereof  *  *  * according to merit and fitness,' etc. They were called upon to classify in grades and to consider, under section 16 of the Civil Service Law, (Cons. Laws, chap. 7), that an ' increase in the salary or other compensation of any person holding an office or position  *  *  * beyond the limit fixed for the grade in which such office or position is classified, shall be deemed a promotion.'  *  *  * According to the constitutional and statutory provisions, and in accord with reason, the commissioners seem to have properly exercised the discretion with which they were invested, when they recognized that positions were to be graded, not only, by the character of the employment, but, as well, by the amount of compensation attaching thereto."

By section 16 of the Civil Service Law the Legislature has made clear its plan, in furtherance of the merit system, that an employee in the competitive class of civil service may not gain an increase in the rate of pay in excess of the range of compensation fixed for his grade, without passing a competitive examination and thereby gaining a promotion.

Such was the rule of *Matter of Ryan* v. *Kaplan* (213 App. Div. 131), which was affirmed by this court " on opinion of McAvoy, J., below." (240 N. Y. 690, 691.) (See, also, *Slavin* v. *McGuire, supra,* pp. 89–91; *People ex rel. Perrine* v. *Connolly,* 217 N. Y. 570, 574–576; *Matter of Williams* v. *Morton,* 297 N. Y. 328, 333–334; *People ex rel. Stokes* v. *Tully,* 108 App. Div. 345, 350; *O'Malley* v. *Board of Educ. of City of N. Y.,* 160 App. Div. 261, 267–268.)

Thus, by action of the Legislature, designed to carry out the civil service section of the Constitution (art. V, § 6), it has come about — as this court has noted — that "Grading of positions previously ungraded confers upon the incumbents some advantages not previously enjoyed and subjects the incumbents to some new disadvantages. An incumbent may not thereafter be demoted to a lower salary grade at the will of the department head; nor may he be promoted to a higher salary grade or assigned to duties not appropriate to the title of the graded position without taking appropriate examination for promotion. The Civil Service Law (Cons. Laws, ch. 7) determines the effect of the grading." (*Matter of Beggs* v. *Kern,* 284 N. Y. 504, 509.)

Although the appellants are still incumbents of graded positions in the competitive class of civil service, they invoke in these consolidated proceedings the benefits and procedure accorded to those entitled thereto by section 220 of the Labor Law (quoted *supra*). In doing so they assert that a raise in pay — which, for them as graded employees, is the statutory indicia of a promotion — would occur whenever the prevailing rate of wages in the locality where their work is performed is in excess of the compensation they are currently receiving. If, as appellants contend, the rate of pay to which they are entitled should not depend upon the grades of their positions — which are based upon merit and fitness, and take into consideration experience, skill and type of work — but should be fixed at the level of the prevailing rate of wages in the locality where their work is performed, it would follow that all employees whose work fell within a given prevailing wage rate would receive the same compensation regardless of grade, achievement or experience; their rate of pay would rise and fall with such prevailing rate, and corresponding automatic promotions or demotions would occur without regard for the employee's experience, or the type and quality of work performed by him.

A result so attained would set at nought the constitutional guides — "merit and fitness" — for the appointment and promotion of civil servants in the competitive class. Such disregard for grading, as a controlling factor in the fixing of compensation for incumbents of positions in the graded services

of the competitive class, would discard procedure which, for more than sixty years, has contributed largely to the successful administration of the merit system in this State. To borrow from language of Chief Judge CRANE writing for this court in *Wood* v. *City of New York* (274 N. Y. 155, 159–160): " There is force in the argument that section 220 of the Labor Law was not intended to apply to competitive positions. If the appellant's theory were correct the State and City Civil Service Commissions would be unable to classify any positions coming under a generic name like electricians, carpenters, iron workers, engineers, and the like. The fact that the competitive class of the civil service has been graded according to the particular work required, and the salary paid, maximum and minimum, without challenge ever since the Civil Service Law was enacted indicates that the prevailing rate law was never thought to be an invasion, a disruption of all civil service regulations. No classification could be made or executed which varied each year and with each locality."

If grading, in the pattern of civil service administration, is to be uprooted — imbedded, as it is, so deeply in the public policy of this State — the change is one to be made by legislative action, not by the judicial process.

We thus reach the question which prompted the dissent by two Justices of the Appellate Division, viz., the date upon which the Municipal Civil Service Commission, by resolution, effectively graded appellants' positions. Subdivision 2 of section 11 of the Civil Service Law provides that the Municipal Civil Service Commission rules and regulations, and modifications thereof, require approval by the Mayor and the State Civil Service Commission as a prerequisite to their validity. As we have seen, in May, 1938, the Municipal Civil Service Commission adopted a resolution which reclassified the appellants into new " Part 39, The Rapid Transit Railroad Service ". The resolution provided that " The maximum and minimum compensation of the grades of positions in this group is fixed at the maximum and minimum in the case of each position of the several scheduled rates of wages adopted by the Board of Transportation and as approved by the Municipal Civil Service Commission from time to time." Approval of the resolution

by the Mayor was obtained on June 2, 1938, and that of the State Civil Service Commission on July 1st of that year. However, it does not appear that a schedule fixing rates of pay for persons in the new classification was annexed to the resolution at the time of such approvel by the Mayor and State Commission. In fact, no such wage schedule was adopted by the Board of Transportation until July 6, 1938. On September 28, 1938, that wage scale schedule was approved by the Municipal Civil Service Commission. Respondents contend that the approval by the Mayor and State Commission of the provision in the resolution of May, 1938, which authorized the Board of Transportation — with the approval of the Municipal Civil Service Commission — to adopt wage scales, served to validate such schedules, when adopted, without the further approval of the Mayor and State Commission.

On three occasions between September, 1941, and July, 1943, new wage schedules were adopted by the Board of Transportation and were approved by the Municipal Civil Service Commission but not by the Mayor or State Commission. However, on December 29, 1942, the Municipal Civil Service Commission passed a resolution codifying Part 39, The Rapid Transit Railroad Service. That resolution was approved by both the Mayor and State Commission in February, 1943, and provided, as did the original 1938 resolution, that wage scales were to be established by the Board of Transportation and approved by the Municipal Civil Service Commission. Again, no wage scale was annexed to the resolution, but in February, 1943 — as distinguished from 1938 — there was a wage scale, adopted by the Board of Transportation and which was approved by the Municipal Civil Service Commission, actually published and in effect.

It is apparent from the Appellate Division decision that a majority of that court believed that the approval in advance by the Mayor and State Commission of such wage scales as the Board of Transportation may adopt — when approved by the Municipal Civil Service Commission — was sufficient compliance with subdivision 2 of section 11 of the Civil Service Law. The dissenting Justices were of the view that the approval of the first (1938) resolution by the Mayor and State Commission was ineffective, because there was at that

time no wage scale actually published and in effect which could have been approved thereby. However, when the second resolution was approved by the Mayor and State Commission in 1943, wage rates had by that time been established by the Board of Transportation and approved by the Municipal Civil Service Commission. Accordingly, the dissenting Justices believed that when the Mayor and State Commission approved the second resolution, the wage schedules which were then published and in operation were also thereby approved. It was their view that appellants had been effectively graded only since 1943, and they therefore voted to remit the matter to the comptroller for determination of the " prevailing rate of wages " for the period between 1938 and 1943 when — as they believed — appellants had not been in the graded service.

In our opinion, the mandate contained in subdivision 2 of section 11 of the Civil Service Law — that Municipal Civil Service Commission rules and regulations, and modifications thereof, " shall be valid and take effect *only* * * * *upon the approval of the mayor* * * * *and of the state civil service commission* " (emphasis supplied) — makes invalid the grades sought to be established by the Municipal Civil Service Commission in 1938, because the salaries for such grades had not then been established, much less approved, by the Mayor and State Commission.

We have seen that salary is the essence of a " grade ", and hence no valid grade may be established until the salary therefor has been fixed. As the statute requires approval by the Mayor and State Civil Service Commission of rules and regulations of the Municipal Civil Service Commission as essential to their effectiveness, we do not believe that such approval may be given by those officials in advance of the actual establishment by the Municipal Civil Service Commission of such rules and regulations. In other words, the approval in 1938 by the Mayor and State Commission of such salaries as may be established " from time to time " by the Board of Transportation and the Municipal Commission was ineffective. (See *Matter of Burri* v. *City of New York,* 291 N. Y. 776.) However, when the Mayor and State Commission approved the second resolution in February, 1943, wage scales — although not annexed to the resolution — were in existence and in actual operation. We conclude

that the approval of the resolution in 1943 carried with it approval of the wage scales then in effect.*

The order of the Appellate Division should be modified by remitting the proceeding to the comptroller with directions that he determine the " prevailing rate of wages " for appellants who may be entitled thereto for the period between July, 1938, and February 25, 1943, and, as so modified, the order should be affirmed, without costs.

FULD, J. (dissenting). That section 220 of the Labor Law (subd. 3) mandates payment of wages to " laborers, workmen or mechanics upon * * * public works " and " not less than the prevailing rate " cannot be denied, and no one disputes it. Likewise undenied and indisputable is the fact that the positions held by petitioners fall within the work classification of " mechanics ". (See *Matter of Gaston* v. *Taylor*, 274 N. Y. 359.) Petitioners are therefore entitled to be paid the prevailing rate of wages, and, indeed, we so held with respect to some of these very petitioners in the *Gaston* case. Yet the court is now holding that the subsequent transfer of their positions to the graded service of the competitive class from the ungraded service of that class deprives petitioners of the protection of section 220. Since the same classification device can readily be applied to all other laborers, workmen and mechanics, the decision opens the door to complete nullification, so far at least as municipal employees are concerned, of the prevailing rate of wage statute, although that statute has reflected the public policy of the state since 1894. (L. 1894, ch. 622; see *Austin* v. *City of New York*, 258 N. Y. 113, 117.)

Petitioners are structure maintainers, car maintainers and maintainers' helpers in the employ of New York City's Board of Transportation, performing work of a manual and mechanical nature — including carpentry, masonry, welding and other skilled trades — in connection with the maintainance and repair

---

* Appellants' arguments directed to the asserted arbitrariness of the Civil Service Commission's gradings are not properly before us in this proceeding — to which the commission is not a party. An attack upon administrative rules and regulations may be made in a proceeding against the commission, and may not be made collaterally in a proceeding to which the rule-making body is not joined as a party. (See *Matter of Sullivan* v. *Williams*, 303 N. Y. 871; *Matter of Beckmann* v. *Talbot*, 278 N. Y. 146, 149–150.)

of the installations and facilities upon the city's rapid transit lines. Until July 1, 1938, their positions were listed under the classification, "Part 1, Ungraded Positions," in the competitive class. Under that classification, they were, concededly, mechanics within the purview of section 220, and as such, entitled to be paid the prevailing rate of wages as determined by the "fiscal officers" of the city. On that day, July 1, 1938, the positions were removed from that classification and placed in a newly created classification, also in the competitive class, called "Part 39, The Rapid Transit Railroad Service," with grades whose maximum and minimum hourly compensation "is fixed at the maximum and minimum * * * of the several scheduled rates of wages adopted by the Board of Transportation and as approved by the Municipal Civil Service Commission from time to time" (Resolution of N. Y. C. Mun. Civ. Serv. Comm., adopted at meeting May 12, 1938, amending classification). Thus did the civil service commission, in entire disregard of the legislative mandate (see *Matter of Heaney* v. *McGoldrick*, 286 N. Y. 38; *Matter of Gaston* v. *Taylor, supra,* 274 N. Y. 359, 366), take from the comptroller, the city's "fiscal officer", jurisdiction to fix wages for mechanics and give it instead to the board of transportation.

Not the slightest change was made in qualifications or duties by the shift from Part 1 to Part 39, and it is admitted that the maximum wages were fixed without any investigation or consideration of prevailing rates. Although the positions are now printed under the caption "graded," there was no attempt to grade the positions themselves on the basis of skill, experience, duties or any other consideration whatsoever. If anything is clear, it is that there is no hierarchy of grades. Now, as before, there is but one kind of car maintainer, one kind of structure maintainer, and one kind of maintainer's helper. True, there is a car maintainer, "Group A", "Group B", "Group C", "Group D", down through "Group G", and a structure maintainer "Group A", "Group B", "Group C", etc. However, such "group" specifications are nothing more than code designations for various mechanical trades having their counterpart in private industry. Each of them represents a job of the same rank and on the same level, paying the same wages. Thus, for example, a mechanic with the title of

car maintainer, group D, is simply a welder, and group D embraces *all* welders. Similarly, structure maintainers are either carpenters, masons, iron workers, plumbers, painters, etc., depending upon their code or " group " designation.[1]

As a matter of fact, all maintainers are of the same rank and on the same level, and there is no promotion, as the majority opinion seems to suggest, from car maintainer, group A, to car maintainer, group B, from group B to group C, or for that matter, from any one group to any other — nor, I should suppose, transfers among these positions — since each involves a different craft. The line of promotion is from maintainer's helper to maintainer and thereafter to nonmechanical positions — to foreman to assistant supervisor to supervisor to assistant division engineer, and, finally, to general superintendent. And that was the precise line of promotion that was open to these petitioners before the shift in 1938 from Part 1 to Part 39. (See *Matter of Cook* v. *Kern*, 278 N. Y. 195.) But, whereas they were formerly conceded the right to the prevailing rate of wages while they held positions as mechanics, that right is now denied

---

1. This is graphically illustrated in the record:

| Title | Rate Cents per Hour |
|---|---|
| Car Maintainer " A " (Car Body) | .75 – .95 |
| Car Maintainer " B " (Machine and Bench Work) | .75 – .95 |
| Car Maintainer " C " (Painting) | .75 – .95 |
| Car Maintainer " D " (Welding) | .75 – .95 |
| Car Maintainer " E " (Electrical Equipment) | .75 – .95 |
| Car Maintainer " F " (Trucks) | .75 – .95 |
| Car Maintainer " G " (Sheet Metal and Forge) | .75 – .95 |
| Structure Maintainer " A " (Carpentry) | .75 – .95 |
| Structure Maintainer " B " (Masonry) | .75 – .95 |
| Structure Maintainer " C " (Iron Work) | .75 – .95 |
| Structure Maintainer " D " (Sheet Metal Work) | .75 – .95 |
| Structure Maintainer " E " (Plumbing) | .75 – .95 |
| Structure Maintainer " F " (Sign Painting) | .75 – .95 |
| Structure Maintainer " G " (Painting) | .75 – .95 |
| Maintainer's Helper " A " (Electrical) | .63 – .73 |
| Maintainer's Helper " B " (Mechanical) | .63 – .73 |
| Maintainer's Helper " D " (Structure) | .63 – .73 |

For each of these separate and distinct competitive civil service titles, the incumbents must demonstrate their merit and fitness by passing an appropriate examination.

to them — although their qualifications and duties are exactly what they previously were.

I agree, of course, that "an employee in the competitive class * * * may not gain an increase in the rate of pay in excess of the range of compensation fixed for his grade, without passing a competitive examination and thereby gaining a promotion." (Opinion of Lewis, J., p. 181.) But, it is clear to me, payment of the prevailing rate of wages to mechanics for the particular work they do cannot possibly result in increasing their pay one cent beyond the compensation to which the law entitled them.

The civil service provisions of the Constitution (art. V, § 6) and the Civil Service Law (§ 16, subds. 1, 7) neither require nor permit the classification of mechanics into grades with maximum wage limits less than the prevailing rate for comparable work. Since petitioners' qualifications and duties are comparable to those of mechanics in the same trades in private industry, they demonstrated—when they passed competitive examinations for their positions—their merit and fitness to perform all of the duties and to receive all of the wages paid for comparable work in private industry. Payment of the entire wage for comparable work is petitioners' statutory due, and its receipt can neither promote nor demote them above or below their mechanical trade. That being so, it follows that no promotional examination is or may be required to establish their merit and fitness for the performance of all of their present duties. No claim is made, and none could be, that there is any higher position as a mechanic in the same trade to which they could be promoted. As noted above except for promotion from helper to maintainer, the only promotional opportunities are to nonmechanical work as foreman and supervisor. Therefore, the maximum wage limits of petitioners' grades have no effect upon their eligibility or opportunity for promotion and serve no purpose, *except to limit arbitrarily* petitioners' maximum wages to an amount that is less than the prevailing rate for comparable work in the community.

Limiting mechanics' maximum wages to specified amounts is not indispensable to their promotion to higher supervisory or administrative positions. Since the year 1938, mechanics in the service of the city — indeed, even some employed in the board of transportation (for instance, stationary engineers,

stationary firemen, pavers and rammers) — have been classified into " Part 38, The Skilled Craftsman and Operative Service ", with grades which embody no limitation upon maximum wages other than " the prevailing rate of wages   *   *   *   as determined by law." The fact that respondents have applied that classification to thousands of city-employed mechanics since 1938, that they have graded them by reference to prevailing rates, certainly proves that mechanics may be graded in a manner which — without impinging upon any civil service principle or disrupting any civil service regulation — permits them to be paid prevailing rates of wages and to be promoted to higher administrative and supervisory positions.

There was no basis for classifying petitioners into grades in Part 39, with maximum wages limited to specified amounts — without regard to the prevailing rate — while classifying other mechanics into grades in Part 38, which imposed no maximum limit on wages other than " the prevailing rate ". The positions of mechanics in Part 38 and Part 39, the record discloses, " are both graded positions, both graded services." Promotions in each Part follow an identical pattern, from mechanic to foreman and so on up the line. There is no difference between the grades of mechanics in those two Parts other than the difference in the limits of the maximum wages that could be paid. Consequently, as respondents acknowledged upon the oral argument, section 220 of the Labor Law could be completely bypassed by the simple device of classifying every mechanic now listed in Part 38 on a basis similar to that in Part 39.

Nor is the limitation of mechanics' wages to specified maximum amounts a necessary condition to their examination for merit and fitness for mechanical work. The prediction made in *Wood* v. *City of New York* (274 N. Y. 155, 159–160) — that " positions coming under a generic name like electricians, carpenters, iron workers [and] engineers " could not be classified at prevailing rates without disrupting civil service regulations — was proved false the very next year, when the civil service commission itself classified those very positions into grades in Part 38, which, as already noted, imposed no limitation upon wages other than " the prevailing rate of wages   *   *   *   as determined by law." Beyond that, this court has directed payment of prevailing rates of wages to mechanics

included in Part 38 (see *Matter of Smith* v. *Joseph,* 300 N. Y. 516; *Matter of Giannettino* v. *McGoldrick,* 295 N. Y. 208), and the commission has likewise promoted mechanics who are graded in that part. (See *Matter of Cook* v. *Kern, supra,* 278 N. Y. 195.) Such actions by court and commission since 1938 establish beyond question that mechanics in the city's service can be classified, graded and paid prevailing rates without any conflict between the Civil Service Law and the Labor Law.

Moreover, if, by a strained interpretation, an appearance of conflict can be created, the uniform tenor of prior interpretation of those statutes demonstrates that the provision of the Labor Law must control. In a variety of situations we have held that the rates of pay fixed by the legislature, whether at a stated amount or at the prevailing rate, are not subject to change by officials otherwise empowered to fix either the compensation or the classification of the affected employees. Thus, we have repeatedly held that salaries mandated by statute are not subject to reduction by administrative officials in the exercise of discretionary powers vested in them by some other statute. (See *Matter of Henderson* v. *La Guardia,* 294 N. Y. 728, affg. 268 App. Div. 892, affg. 182 Misc. 1071; *Matter of Shevlin* v. *La Guardia,* 279 N. Y. 649, affg. 254 App. Div. 922, modfg. 166 Misc. 473; *Matter of Wingate* v. *McGoldrick,* 279 N. Y. 246.) Contrariwise, such employees were denied the benefit of a local law granting salary increments, because their compensation was fixed by section 220. (See *Matter of Tuschinsky* v. *City of New York,* 261 App. Div. 802, motion for leave to appeal denied 285 N. Y. 861.) These limitations on the power of public officials in general apply equally to the civil service commission. It, too, is the creature of the legislature and not its master.

The discretionary power of civil service commissions to classify or grade positions may not be exercised in such a manner as to affect or alter any classification made or any compensation fixed by statute. (*Bressler* v. *Board of Higher Educ. of City of N. Y.,* 298 N. Y. 112; *Matter of Metropolitan Life Ins. Co.* v. *Boland,* 281 N. Y. 357, 361; *Matter of Kilcoyne* v. *Lohr,* 226 App. Div. 218, affd. 252 N. Y. 526; *Zuckerbrod* v. *Board of Higher Educ. of City of N. Y.,* 276 App. Div. 752, motion for leave to appeal denied 300 N. Y. 765.) Thus, for

example, we have refused approval and sanction to civil service commission action which divided into grades with maximum annual compensation of $1,800, $2,400 and $3,000, a position for which a salary range of $1,500 to $3,000 was fixed pursuant to special statute. (See *Bressler* v. *Board of Higher Educ. of City of N. Y., supra,* 298 N. Y. 112; *Zuckerbrod* v. *Board of Higher Educ. of City of N. Y., supra,* 276 App. Div. 752, motion for leave to appeal denied 300 N. Y. 765.) In the *Bressler* and *Zuckerbrod* cases, an attempt to classify a position into grades with less compensation than that fixed in accordance with the applicable statute, was held illegal as exceeding the powers of a civil service commission. By that decision, the court necessarily held inapplicable to positions whose compensation was fixed by statute the discretionary power of civil service commissions to classify such positions into grades with lower compensation.

The decisions in the *Bressler* and *Zuckerbrod* cases went further than is required for decision of the case before us. There, the grades established by the Municipal Civil Service Commission — clerk, grades 2, 3, 4 and 5 — prescribed successively higher qualifications, responsibilities and compensation for the performance of the same type of clerical work in positions arranged in a promotional series. Here, as we have seen, there is but one grade for petitioners' mechanical work, and no higher grade is provided whereby petitioners upon promotion may continue to perform more skilled or responsible work at the same mechanical trade. Therefore, we do not reach the question whether statutory compensation at the prevailing rate of wages is payable to a mechanic after his position has been subdivided into grades differentiated by degrees of experience or skill—although in both the *Bressler* and *Zuckerbrod* cases, where a similar question was presented as to clerical employees, it was held that payment of statutory compensation may not be avoided by its subdivision into such grades.

No valid distinction may be made between the statute involved in *Bressler* and *Zuckerbrod* — Education Law, former section 889 — and section 220 of the Labor Law. Neither statute specified the amount of money to be paid to the employee. Former section 889 of the Education Law provided that the compensation shall be " not less than " the compensation specified in pre-existing salary schedules, and section 220 of the Labor

Law prescribes that the compensation shall be " not less than " the prevailing rate of wages to be ascertained by investigation of wages paid for comparable work in the community. Nevertheless, we declared that former section 889 fixed " minimum standards, including minimum pay * * * at the levels existing in New York City on March 5, 1931 " (*Matter of Russell* v. *Buck,* 294 N. Y. 50, 55), and, as to section 220, that it is " compensation fixed by law ", which public officials are " powerless to increase or diminish " (*Wright* v. *State of New York,* 223 N. Y. 44, 47), that " compensation however fixed which results in the payment of lower wages for a legal day's work is not in accordance with the statute " (*McNulty* v. *City of New York,* 238 N. Y. 29, 33), and that " No officer or board can nullify that obligation by fixing wages at a lesser amount." (*Matter of Gaston* v. *Taylor, supra,* 274 N. Y. 359, 364.) A striking illustration of the respect heretofore paid to the exclusive fixation of wages for laborers and mechanics by section 220 is our holding that a statute increasing the compensation of employees in the public schools did not apply to mechanics there employed. (See *Schwartz* v. *Board of Educ. of City of N. Y.,* 239 N. Y. 566, affg. 209 App. Div. 738.) [2]

Payment of the prevailing rate of wages to mechanics in an amount greater than the maximum " fixed for their grades," does not, I repeat, promote them to any higher grade without competitive examination. Both before and after the 1938 " reclassification " from Part 1 to Part 39, there was only one grade of mechanic provided for, with duties and qualifications varying according to the specialty involved. The " grading " of such positions had no effect whatsoever on mechanics as such. No higher grade of mechanic was provided to which petitioners could be promoted, the only possible promotions being to foreman and supervisor — except from helper to maintainer. Nor did the grading make any change in petitioners' rank or duties in relation to their supervisors; it left them in the same relative positions that they occupied as

---

2. *Matter of Ryan* v. *Kaplan* (240 N. Y. 690), *Matter of Beggs* v. *Kern* (284 N. Y. 504), and the other cases cited by Judge LEWIS in his opinion (pp. 181–182) involve employees whose compensation was not fixed by statute, and, consequently, they do not impair the authority of the decisions to which I have referred.

ungraded mechanics. Petitioners are not seeking the wages paid a foreman for a foreman's work. They ask only for a mechanic's pay, at the prevailing rate, for the mechanic's work which they are in fact performing, and for which they have already established their qualifications in strict accordance with civil service requirements.

That the prevailing rate may vary is beside the point. No doubt it will vary, but so presumably will the pay for other public employment, not compensated at the prevailing rate. We may take judicial notice of the fact that many changes have been made by the city recently, and that others are proposed in its current budget. Great as are the merits of the civil service system, it was never considered as a device for wage stabilization. Such variations would not, as charged, result in '' the same compensation regardless of grade, achievement or experience '' (opinion, p. 182). Under no circumstances would a helper ever be entitled to the prevailing rate paid to a fully qualified maintainer (car or structure), nor would the latter ever be entitled to the pay specified for a foreman. And, beyond all that, mechanics may not properly be paid fixed wage rates when the legislature has decreed that their wages shall be adjusted periodically to reflect the wages paid for comparable services in private industry.

Neither *Wood* v. *City of New York* (*supra*, 274 N. Y. 155), nor *Matter of Gaston* v. *Taylor* (*supra*, 274 N. Y. 359)—upon which respondents rely—requires a different result. Wood was examined for and appointed as an inspector of light and power, grade 3, with maximum compensation of $2,760 annually. The civil service duties of his position did not require him to perform any of a mechanic's duties and, therefore, the court ruled, section 220 of the Labor Law did not fix or determine his compensation. While Chief Judge CRANE wrote in the *Wood* case that '' There is force in the argument that section 220 of the Labor Law was not intended to apply to competitive positions '' (p. 159), it is evident that it does not represent the present law. Just a month after the *Wood* decision, we actually ruled in the *Gaston* case (*supra*, 274 N. Y. 359, 363), that section 220 did apply to the position of structure maintainer which was then classified in the ungraded part of the *competitive class*. The statement in that

case that section 220 applied to mechanics in the " ungraded " category — in the competitive classification, of course — simply construed the statute as applicable to the classifications then in existence, but did not limit the application of the statute or any classification or grading of mechanics that might be made in the future. There was no need to decide any such question for there were then no mechanics in the graded service. It was not until a year later, as already observed, that mechanics in city departments were classified into grades, under Part 38, at " the prevailing rate of wages  *  *  *  as determined by law."

The city admits that the positions of petitioners could have been graded similarly. On the other hand, the city claims that all employees now under Part 38 — where the compensation of the grades " is fixed at the prevailing rate of wages  *  *  * as determined by law " — could be reclassified so as to deprive them of the prevailing rate now paid to them. If that is so — and there can be no doubt that it is — section 220 ceases to be a state-declared policy (*Austin* v. *City of New York, supra,* 258 N. Y. 113, 117), and becomes an act of grace on the part of local officials, to be granted at a whim or withheld by a pen stroke. It is difficult, nay impossible, to recognize here the law described by us as a legislature-created " obligation which extends to all public authorities ". (*Matter of Gaston* v. *Taylor, supra,* 274 N. Y., p. 364.)

Since, then, I believe that section 220 entitles petitioners to receive the prevailing rate of wages for the work that they perform, I find it unnecessary to consider whether that right is conferred directly by section 17 of article I of our State Constitution. We have heretofore had no occasion to pass upon that question. The constitutional provision was admittedly modelled on the Labor Law section (3 New York Constitutional Convention of 1938, Revised Record, pp. 2200–2229), and, indeed, but a short time before that constitutional provision was drafted and submitted to the 1938 Convention, this court actually held that, despite the " letter of the statute " — which in terms limited its application to employees of contractors on public works — section 220 was applicable to public employment as well as public contracts. (See *Matter of Gaston* v. *Taylor, supra,* 274 N. Y. 359, 363; see, also, *Wood* v. *City of*

*New York, supra,* 274 N. Y. 155, 158; *Ryan* v. *City of New York,* 177 N. Y. 271, 273; *McAvoy* v. *City of New York,* 52 App. Div. 485, affd. 166 N. Y. 588.) While this consideration is not conclusive, it indicates to me the further difficulties which must be surmounted in achieving the result reached by the court.

It was asserted upon oral argument that serious fiscal consequences may ensue to the city unless its contentions are sustained. If for that or any other reason the long-established policy of the state, as expressed in section 220, is to be abandoned or modified, the method is, of course, further legislation (cf. Assem. Int. No. 2829, Pr. No. 2974, Feb. 19, 1952), not nullification.

The order appealed from should be reversed, the comptroller's report and finding annulled, with costs, and the matter remitted to that official with instructions to investigate and determine petitioners' prevailing rates of wages pursuant to section 220 of the Labor Law.

LOUGHRAN, Ch. J., DESMOND, DYE and FROESSEL, JJ., concur with LEWIS, J.; FULD, J., dissents in opinion; CONWAY, J., not sitting.

Ordered accordingly. [See 304 N. Y. 759.]