Nathan R. Sobel, J.
The issue to be determined in these consolidated actions is whether the Port Authority is required by section 220 of the New York Labor Law to pay its “ direct ” employees (as distinguished from employees of contractors) the prevailing rate of wage.
Petitioners are some 700 laborers, workmen and mechanics who are “ direct ” employees of the Port Authority paid either hourly wages or annual wages.
The Industrial Commissioner has rejected their petitions on the ground that the Port Authority, as a bistate agency is immune from the unilaterally enacted section 220. The petitioners commenced this action. The Port Authority has intervened. It makes two contentions:
First: The Port Authority, as an agency of the States of New York and New Jersey, is subject only to legislation concurrently enacted by the Legislatures of both States. Inasmuch as section 220 lacks the concurrence of the State of New Jersey, it is not binding upon the Port Authority. (This is the basis for the decision of the Industrial Commissioner.)
Second: The prevailing rate of wage provisions of section 220 do not apply to public employees who are governed by classified, competitive, civil-service-type systems of compensation consisting of fixed, graded levels with minimum and maximum salaries. (The Industrial Commissioner did not reach this issue.)
I find in favor of the petitioners and against the Industrial Commissioner on both issues presented.
*746 SECTION 220 : THE PREVAILING WAGE LAW
Section 220 has been held to apply to “ direct ” employees of the State. This is most significant.
As the section reads now that fact is obscured. But the original enactments (L. 1870 ch. 385; L. 1894 ch. 622; L. 1897 ch. 415; L. 1899 ch. 567) clearly made its provisions with respect to both hours of work and prevailing wages applicable to laborers, workmen or mechanics on public works who are “ directly ” employed by the State or by municipal corporations or by public authorities. Our courts in a series of eases have held that subsequent amendments which appeared to make section 220 applicable only to contractors or subcontractors, did not change the original intent to include “ direct ” employees. (McAvoy v. City of New York, 52 App. Div. 485, affd. 166 N. Y. 588; Austin v. City of New York, 258 N. Y. 113; Wood v. City of New York, 274 N. Y. 155; Matter of Gaston v. Taylor, 274 N. Y. 359.)
On the other hand, the constitutional provision (art. I, § 17), although reading little differently from section 220, has been held to apply solely to employees of contractors or subcontractors engaged in the performance of public work. (See Matter of Corrigan v. Joseph, 304 N. Y. 172,179; but note dissent of Fuld, J., pp. 195-196.)
New Jersey, our partner in the Port Authority compact, also has a prevailing wage law but that statute by its terms and by rulings of the New Jersey Attorney General is applicable only to employees of contractors and not to “direct” public employees. (N. J. Stat., §§ 34:11-1 to 34:11-56.25 et seq.)
Thus it is only the New York unilaterally adopted statute, section 220, which would impose the prevailing wage concept on the Port Authority, a bistate agency created by compact between New Jersey and New York under sanction of Congress. (U. S. Const., art. I, § 10, subd. 3.)
This specific issue has never been decided by our courts (except obliquely as noted infra) and obviously a decision on this issue may have significance beyond merely this prevailing wage dispute.
THE PORT OF NEW YORK AUTHORITY (L. 1921, ch. 154).
The prevailing wage law was first enacted in this State in 1894. It antedates the creation of the Port Authority — if that is at all significant.
An admirable discussion of the events preceding the creation of the Port Authority as well as of the “ foreseeable ” problems, *747 may be found in Cohen “ The New York Harbor Problem and Its Legal Aspects,” (5 Cornell L. Q. 373). (See, also, generally, Frankfurter and Landis “ The Compact Clause of the Constitution— A Study in Interstate Adjustments,” Yale L. J. Vol. 34:685.)
The Port Authority was created by an interstate compact between the States of New Jersey and New York in 1921 (L. 1921, ch. 154; L. N. J. 1921, ch. 151) and approved by Congress in the same year.
It is clear that a sovereign State may validly regulate activities, persons and property within its jurisdiction, even though extraterritorial repercussions ensue, whenever such regulation is vital to the welfare of its inhabitants. (Osborn v. Ozlin, 310 U. S. 53, 62-63; Alaska Packers Assn. v. Commission, 294 U. S. 532, 541.)
Even the Commerce Clause is not a significant restraint on such State action for the clause is only a reservoir of Federal power not a dam against action by the State. Until Federal power is exercised, the States are not excluded from dealing with matters of State concern, provided, of course, State action neither discriminates against nor unreasonably hampers interstate commerce. (Pennsylvania Gas Co. v. Public Serv. Comm., 225 N. Y. 397.) In any event, Congress has never acted to prevent imposition of prevailing wages upon direct or indirect employees of State or local governments or contractors on public work. (It has acted only in its own sphere; witness the Davis-Bacon Act [U. S. Code, tit. 40, § 276a] and the WalshHealey Act [U. S. Code,, tit. 41, § 43a] dealing respectively with Federal construction and Federal purchasing.) Indeed, history has demonstrated that diversity among the States in social legislation is often desirable; it commands imitation and advances social experimentation. Far from restricting State action, Congress has often reinforced it by means of grants-in-aid and other devices.
But what a State has the sovereign right to do, it may surrender. It may voluntarily subject itself to burdens and obligations in favor of another State. This the State of New York did when it entered into the Port Authority Compact. The question is — to what extent?
The pertinent provision is article VTI. It provides: ‘ ‘ The Port Authority shall have such additional powers and duties as may hereafter be delegated to or imposed upon it from time to time by the action of the legislature of either state concurred in by the legislature of the other.” (See, also, art. III.)
*748 The provision speaks of both powers and duties. I have examined some 30 odd statutes concurrently enacted by the party States implementing the original plan and authorizing the successive projects undertaken by the Port Authority. All delegate additional power; none imposes obligations or duties. These therefore furnish no precedent in interpreting the intent of the Compact. Nor are the cases of much help in this regard.
I do not bother to discuss the cases which hold that the Port Authority is immune from municipal regulation or control. (Bush Term. Co. v. City of New York, 152 Misc. 144, affd. 282 N. Y. 306; Whalen v. Wagner, 4 N Y 2d 575; Port of New York Auth. v. Weehawken Township, 27 N. J. Super. 328; Port of New York Auth. v. City of Newark, 17 N. J. Super 328; Miller v. Port of New York Auth., 18 N. J. Misc. 601; Port of New York Auth. v. Union City, 19 N. J. Misc. 421.) Since the State is immune from such regulation or control, it would follow that the Port Authority, too, as a State agency performing governmental functions, would also be immune (cf. Matter of Dormitory Auth., 18 N Y 2d 114). But of course the State of New York is not “ immune ” from the prevailing wage law. These cases are not therefore helpful.
Nor for the very same reason do I discuss the cases dealing with immunity of the Port Authority or its securities from Federal taxation. (Commissioner of Internal Revenue v. Shamberg’s Estate, 144 F. 2d 998; Helvering v. Gerhardt, 304 U. S. 405; cf. Graves v. O’Keefe, 306 U. S. 466.) The State and its securities are also so exempt.
Two cases, however, both by trial courts, do consider the precise issue.
Port of New York Auth. v. Linde Paper Co. (205 Misc. 110) considered the application of New York’s emergency rent laws to property owned in New York City by the Port Authority. The State and its property were specifically exempted from the operation of that law. Basically the decision turns on that factor. But Judge Schweitzer did hold, on an alternative ground, that the emergency rent laws, as a unilateral enactment of the State of New York, may not impose a duty or obligation on the Port Authority. This alternative basis for the decision is directly in point.
The second decision, Delaware Riv. & Bay Auth. v. Carello (222 A 2d 794 [Del.]), is from a Delaware Court of Chancery. The plaintiff was also a bistate authority created by compact of the States of Delaware and New Jersey adopted in 1962. Delaware, in 1965, adopted a ¡statute (permitting governmental employees to bargain collectively. New Jersey never enacted a *749 comparable statute. The compact provided (art. VII) that “ no additional duties or obligations shall be undertaken by the Authority under the law of either State * * * without authorization by the law of both States.” (17 Del. Code, § 1701 et seq.) The Chancery Court, interpreting this provision, held: (1) The Delaware statute postdates the compact; (2) it was not supported by companion legislation of New Jersey; (3) Delaware, in entering into the compact, surrendered a portion of its sovereignty; (4) therefore the Delaware statute is ineffective. The court noted, however, that its ruling would not apply to unilateral State statutes which antedate the compact. That ruling is based on the express terminology of that compact. But article VII of the compact also speaks of 1 ‘ additional ’ ’ duties hereafter imposed.
The parties have not briefed the latter issue, although on the argument I inquired concerning it.
I also inquired concerning private contractors of the Port Authority. I am advised that some, but not all Port Authority contracts, do mandate payment of prevailing rates of wage but that this is a matter of “voluntary election” not mandate. This is also true of the membership of Port Authority employees in the New York State Retirement System (Retirement and Social Security Law, § 31, subd. a).
With respect to workmen’s compensation, both States have voluntarily “consented” (L. 1950, ch. 301, §§ 1 and 7; N. J. Stat., §§ 32:1-157 and 32:1-163) to submit to the jurisdiction of the State in which the injury occurred. And,, with respect to condemnation proceedings, New York courts have applied New Jersey law to property located in New Jersey Matter of Port Auth. Trans-Hudson Corp. (Hudson Rapid Tubes Corp.) (20 N Y 2d 457).
I mention these but there may be other ramifications beyond the issue raised.
In reaching my decision, however, I do not consider these ramifications. Nor do I consider the economic impact of the prevailing wage concept on the Port Authority. Nor do I consider the ‘ ‘ policy ’ ’ behind the prevailing wage of which early decisions make much. Such matters are for appellate courts. I merely decide that the compact, and more particularly article VII thereof, does not directly or even impliedly, establish a purpose of either State to surrender its sovereignty over such matters as prevailing rates of wage or hours of work on public work. Such an intention could have and would have been spelled out with precision and not by the generalities employed in article VII of the compact.
*750 GRADED EMPLOYEES.
Graded employees (with minor exceptions) are not specifically exempted from the provisions of section 220. This ‘ ‘ exception ” has been a process of decision. (Matter of Gaston v. Taylor, 274 N. Y. 359, 363; Wood v. City of New York, 274 N. Y. 155,159-160; Matter of Corrigan v. Joseph, 304 N. Y. 172, 183.) Such “ decisions ” have been based on the superior command of the civil service article of the Constitution (art. V, § 6) that appointments and promotions shall be on merit and upon the provisions of the Civil Service Law that “increases in salary” shall be deemed promotions (see Civil Service Law, art. 8). These commands have been held to be superior to section 220 of the Labor Law.
But employees of the Port Authority are not subject to the civil service provision of the Constitution or the laws enacted pursuant thereto. The compact provides otherwise (L. 1921, ch. 154, § 1, art. XIV).
If the laborers, workmen and mechanics employed by the Port Authority, whether graded or ungraded, are to be exempt from the provision of section 220, this must be done by legislation.
Judgment in favor of the petitioners shall direct the Industrial Commissioner to proceed in accordance with the statute to determine the prevailing rate of wage applicable to petitioners.