Caroline K. Simon, J.
On October 5, 1967 at about 8:15 p.m. Saul Gardner, then a student at the State University of New York in Stony Brook, Long Island, was descending the concrete steps leading to the rear entrance of Roth Dormitory (Bldg. No. 2) on the campus of that institution. His left foot caught on a piece of pipe projecting from a hole in one of the steps, causing him to fall and sustain injuries which form the basis for this claim of negligence of the State of New York in its maintenance of that facility.
The claim was timely filed with the Clerk of the Court of Claims on November 30, 1967 in the name of Saul D. Gardner, then an infant, by his father, Abraham Gardner, as guardian, and his father, individually. At the time of trial Saul Gardner was 22 years old. The title of the claim, at the court’s suggestion, during trial was changed to reflect his attainment of majority and is used as changed.
The claim has neither been assigned, nor tried, nor brought before any other court or tribunal for determination. By agreement of counsel with the calendar Judge, this court now considers only the liability phase of the claim.
At the time of the accident Saul Gardner was a fourth-year student at Stony Brook University. He resided at Shoreham, New York, some 10 miles distant from the campus. He stated that Roth Dormitory was new in September, 1967. No bannisters had as yet been installed on the steps, although the holes for the railings had been placed in position. He said that a lighting fixture standard was located some 25 feet from the bottom of the steps. It had been unlit since completion of the building and was not lit on the accident date. He added *279 that the steel entrance doors opened from the middle outward and swung closed, preventing any inside corridor lighting from illuminating the steps, and that the light from nearby dormitory windows enabled him to see the steps only dimly.
Mr. Gardner walked down the middle of the stairs ahead of some friends who accompanied him. He caught his left heel in the pipe hole on the bottom step and fell hard on his left side, striking his head and twisting his ankle. He “ blacked out”. His friends helped him to stand, and then assisted him to the infirmary and later to the hospital. X rays disclosed a fracture of the fifth metatarsal shaft, a cerebral concussion, and a sprained left ankle.
On cross-examination Mr. Gardner stated that he had used the steps several times before the accident and was aware that holes existed, but that he could not see the holes as he walked down the steps that evening, although he was looking ahead of him and was not running or pushing or conversing at the time he fell.
Counsel for the State stipulated that the lighting pole was unlit at the time of the accident, and that Saul Gardner was lawfully on the premises when he fell.
Two fellow students testified to the facts and confirmed Mr. Gardner’s account of the events.
The State moved to dismiss the claim for failure of proof that either the State of New York or the State University was responsible for the operation and maintenance of the dormitory, and asked the court to take judicial notice of sections 1675 through 1690 of the Public Authorities Law (tit. 4), which created and outlined the powers of the Dormitory Authority.
An additional State motion to dismiss, premised on the absence of a duty to light a “ common way ” in the absence of a specific hazard, is not determined by this court for reasons which this decision makes apparent.
In giving up its right to sovereign immunity, New York State has acted in accordance with the statement that ‘ ‘ what a State has the sovereign right to do, it may surrender.” (Matter of Agesen v. Catherwood, 55 Misc 2d 744, 747, revd. on other grounds 32 A D 2d 416.)
The legislation which established and thereafter continued the Court of Claims waives the State’s right to immunity and provides that it “ assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article.” (Court of Claims Act, art. II, § 8.)
*280 “ The New York State Court of Claims is a constitutional court of record, having exclusive jurisdiction of claims against the State of New York and certain public authorities.” (“ The Court of Claims: Its Development and Present Role in the Unified Court System” by John J. McNamara, Jr., 40 St. John’s L. Rev. 1 [Dec. 1965].)
The courts have consistently held that jurisdictional requirements must be strictly construed. In Matter of Plumbing Assn. v. New York State Thruway Auth. (5 N Y 2d 420, 424) Judge Ftjld stated: ‘ ‘ the cases confirm the conclusion that a public authority enjoys an existence separate and apart from the State, even though it exercises a governmental function ”.
In certain legislative enactments establishing independent authorities there is a precise statement as to where the authority may sue or be sued. For example section 12 of the Health and Mental Hygiene Facilities Improvement Act (L. 1968, ch. 359, efir. June 1, 1968) gives the Supreme Court exclusive jurisdiction of actions by or against the Health and Mental Hygiene Facilities Improvement Corporation; in section 361-b of the Public Authorities Law the Court of Claims has been given exclusive jurisdiction to hear and determine tort and contract claims against the New York State Thruway Authority; in section 1607 of the same law it is empowered to hear tort claims against the Saratoga Springs Authority. This last section was enacted in 1939 after the decision in Pantess v. Saratoga Springs Auth. (255 App. Div. 426) cited by the State in the instant claim.
The act creating the Dormitory Authority states that it may sue or be sued, but omits mention of a specific court in which such suits should be brought. In Matter of Dormitory Auth. (Span Elec.) (18 N Y 2d 114, 117) the Court of Appeals has placed its sanction on the statement in Braun v. State of New York that the Dormitory Authority “ is a separate body politic, for whose tortious acts the State is not responsible.” (203 Misc. 563, 564.)
The State has cited these cases as authority for finding that the Court of Claims does not have jurisdiction over the Dormitory Authority. The Court of Appeals held in the Matter of Dormitory case that the Authority was bound by an arbitration clause inserted in a contract executed by the Authority in connection with furnishing labor and materials for electrical work to be installed in one of its structures and restated the Braun finding that the Dormitory Authority is an independent governmental entity, separate and distinct from the State.
This court recognizes that the Authority has the right given to it by subdivision 1 of section 1678 to sue and be sued. The *281 question whether such suit should be brought in the Court of Claims or the Supreme Court was neither raised nor determined in the Court of Appeals case cited above. It however must be resolved by the fact that the State is not responsible for the Dormitory Authority’s tortious acts and that suit against the Authority does not come within this court’s jurisdiction.
It is regrettable that claimants have not chosen the forum mandated by the controlling decisions, and that the State brought no motion to dismiss for lack of jurisdiction and thus have the jurisdictional question determined before trial. Unwarranted delay in reaching a determination on the merits, and clogging of court calendars thus could have been avoided.
Proper use of the courts in the exercise of legal rights is a strength of our democracy.
Under the rule of stare decisis, this court is bound by the cited cases. It therefore grants the State’s motion, on which decision had been reserved. The question as to the lighting of a ‘1 common way ’ ’ is not considered or decided. The claim must be, and hereby is dismissed.