In the Matter of GEORGE E. YERRY, JR., as President of the Hudson Valley District Council of Carpenters, United Brotherhood of Carpenters & Joiners of America, A. F. L., Appellants, against OSCAR A. GOODSELL, as Treasurer and Fiscal Officer of the Board of Education, City of Kingston, Respondent.

Third Department, July 24, 1957.

*Robert P. Knapp, Jr.,* and *Charles H. Tuttle* for appellants.

*James J. Abernethy, Corporation Counsel,* for respondent.

HALPERN, J. The petitioners appeal from a dismissal of a proceeding brought by them under article 78 of the Civil Practice Act to review a determination by the comptroller of the City of Kingston, dismissing a complaint filed with him by the petitioners, charging that the Board of Education of Kingston was violating section 220 of the Labor Law.

Section 220 of the Labor Law provides in part as follows:

" 3. The wages to be paid for a legal day's work, as hereinbefore defined, to laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages as hereinafter defined. * * *

" 7. The fiscal officer as herein defined may, on his own initiative, and must, on a verified complaint in writing of any person interested, cause an investigation to be made to determine the prevailing rate of wages in the same trade or occupation in the locality within the state where such public work is being performed, or the hours of labor performed by the workmen, laborers and mechanics employed on such public work, or both. * * *

" 8. Before proceeding under a complaint presented as provided in subdivision seven, or before making any order or determination upon an investigation made upon his own initiative, the fiscal officer shall order a hearing thereon at a time and place to be specified, and shall give notice thereof, together with a copy of such complaint or the purpose thereof, or a statement of the facts disclosed upon such investigation, which notice shall be served personally or by mail on any person or corporation affected thereby; * * * the fiscal officer shall determine the issues raised thereon and shall make and file an order in his office stating such determination, * * * any party to the proceeding aggrieved thereby may review the said proceedings by a writ of certiorari within thirty days from the notice of the filing of the said order in the office of the fiscal officer. When a final determination has been reached, if the determination is in favor of the complainant and involves or relates to the rate of wages paid on such public work, the complainant or any other person affected may within three months after the service of notice of the filing of said final order institute an action against the person or corporation found violating this act for the recovery of the difference between the sum actually paid and the amount which should have been paid as determined by said final order, from and after the date of the filing of said verified complaint or of filing report of investigation made on his own initiative with the fiscal officer

as hereinbefore provided." (L. 1927, ch. 563; L. 1939, ch. 832; L. 1941, ch. 656.)

The Board of Education had undertaken the reconstruction and repair of a public school building, using its regular maintenance employees, who were paid their regular salaries. The petitioners, the officers and some of the members of labor unions in the building trades in and about Kingston, objected to this, maintaining that the work should be classified in accordance with the classifications prevailing in the building trades and that the employees should be paid the prevailing rates of wages for the respective trades. The board's maintenance employees were regular civil service employees; they were not members of the petitioner unions. It was apparently the hope of the petitioners that, if the board were required to classify its employees and to pay the prevailing rate of wages for each class, the board would find it profitable to hire union craftsmen in place of the maintenance employees. That was the extent of the petitioners' interest in the matter. They did not claim to be acting for or on behalf of the employees on the job. On the contrary, it was their aim to have the civil service employees ousted from the work and to have them replaced by union members.

The comptroller of the City of Kingston was the "fiscal officer" referred to in the statute, with respect to work done by or on behalf of the city (Labor Law, § 220, subd. 5, par. c). He was apparently satisfied that no violation of the prevailing rate of wages statute was involved in the Board of Education's work. He therefore did not institute an investigation on his own initiative as he was authorized to do by the statute.

The petitioners filed a complaint with the comptroller, charging that the board was violating section 220 of the Labor Law and demanding that the comptroller institute an investigation and make a determination of the prevailing rate of wages, under the provision of subdivision 7 requiring him to do so "on a verified complaint in writing of any person interested". Upon ascertaining that the individual petitioners were not employed by the board and that the petitioner unions did not represent any of the employees on the job, the comptroller dismissed the complaint, holding that they were not "persons interested" entitled to file a complaint under the statute.

The petitioners then brought this article 78 proceeding; the Special Term agreed with the comptroller and dismissed the proceeding and this appeal followed.

We think it is clear, both upon the basis of the statutory history and upon the basis of a textual analysis of the subdivisions quoted, that the Special Term was right. The petitioners' attempt to invoke the special complaint procedure under subdivisions 7 and 8 grows out of a misunderstanding of the nature of the statutory scheme. The complaint procedure was not designed to provide a method of enforcing the prevailing rate of wages statute generally; it was adopted solely for the purpose of providing the employees on the job with an effective administrative remedy.

The prevailing rate of wages statute originated in chapter 622 of the Laws of 1894. It subsequently became part of section 3 of the Labor Law of 1897 (L. 1897, ch. 415) and the Labor Law of 1909 (L. 1909, ch. 36). In the 1921 revision of the Labor Law, the substantive provision of section 3 of the old Labor Law became subdivision 3 of section 220 of the new Labor Law (L. 1921, ch. 50).

However, neither the old Labor Law nor the 1921 Labor Law contained any express provision for the enforcement of the statute by an employee who was being paid less than the prevailing rate of wages. The sanctions relied upon by the Legislature were principally penal in character, provision having been made for the criminal prosecution of any contractor who violated the statute and for the removal of any public officer who knowingly permitted any violation (Labor Law of 1909, § 3, as amd. by L. 1916, ch. 152, now Labor Law, § 220; Labor Law of 1897, § 4, as amd. by L. 1899, ch. 567, now Labor Law, § 210). However, in some cases, it was held that the underpaid employee had the right to maintain an action at law against the public agency or the contractor by whom he had been employed to recover the difference between what he had received and what he should have been paid (*McAvoy* v. *City of New York*, 52 App. Div. 485, affd. 166 N. Y. 588; *Austin* v. *City of New York*, 258 N. Y. 113). In other decisions, doubt was expressed as to whether such an action would lie (*Matter of Gaston* v. *Taylor*, 274 N. Y. 359, 366). At any rate, the common-law remedy was unsatisfactory, if not wholly ineffective. In a common-law action, the employee had the burden of proving the prevailing rate of wages in the locality for the particular trade or occupation. The employee had to bear the expense of gathering the proof and of presenting it upon the trial. There was no procedure by which an administrative determination of the prevailing rate of wages could be obtained by the employee in advance of bringing an action for damages.

The Legislature addressed itself to this problem in 1927. It devised an administrative remedy for employees who claimed that they had been paid less than the prevailing rate of wages upon public work (§ 220, subds. 7, 8, as added by L. 1927, ch. 563). The statute authorized the employees to file a verified complaint with the fiscal officer and to obtain from him an administrative determination of the prevailing rate of wages, upon the basis of which they could maintain an action at law.

As the Court of Appeals explained the statutory development in *Matter of Gaston* v. *Taylor* (274 N. Y. 359, 362, *supra*): "Having created the obligation and provided a penalty for its violation, the Legislature did not, at that time [at the time of the original adoption of the predecessor of subdivision 3 of section 220], see fit to make available to persons interested any special method for the enforcement of the obligation, or special remedy for its violation. The omission was supplied by chapter 563 of the Laws of 1927."

The 1927 statute had been drafted by the Industrial Survey Commission, created by a concurrent resolution of the Legislature adopted in 1926. In its 1928 report, the commission gave the following explanation of the genesis and purpose of the statute: It "provides that any person employed at less than the prevailing rate of wage shall have a civil action against the public contractor for the difference between the wage received and what the prevailing rate of wage was as established by the proper authority. The provisions of the former law which were purely punitive, therefore, have been changed so that the law is now not only punitive but also remedial and is a great step forward in the protection offered to workmen engaged on public contracts." (N. Y. Legis. Doc., 1928, No. 87, p. 12.)

The legislative history thus demonstrates that the new complaint procedure in subdivision 7 was designed solely for the purpose of enabling the employees on the job to obtain effective relief.

The new remedy superseded the earlier ineffective common-law remedy and it is now the exclusive remedy of an employee of public authorities engaged in public work (*Matter of Gaston* v. *Taylor, supra*; *Campbell* v. *City of New York,* 291 N. Y. 461; *Jung* v. *City of New York,* 6 Misc 2d 200).

Even without the benefit of the legislative history, the text of the statute makes it clear that only an employee or a person acting on his behalf is a "person interested" entitled to file a complaint under subdivision 7, upon the basis of which the fiscal officer is required to hold a hearing. The key provision is

that which requires the fiscal officer to institute the investigation upon the filing of '' a verified complaint in writing '', by a person authorized to do so. The person filing the complaint is subsequently referred to in subdivision 8 as the '' complainant ''. The '' complainant '' is authorized to '' institute an action against the person or corporation found violating this act for the recovery of the difference between the sum actually paid and the amount which should have been paid as determined by said final order''. A '' person interested '' who is authorized to file a verified complaint under subdivision 7 must be a person who may become entitled to recover as a complainant under the authority of subdivision 8. Obviously, no one can recover as a complainant under subdivision 8 unless he has been employed by the defendant and has been paid less than the prevailing rate of wages as finally determined by the fiscal officer. Correspondingly, the term '' person interested '' in subdivision 7 must be construed to mean a person who is in a position to file a '' verified complaint in writing '' upon the basis of which he may ultimately seek a recovery for wages against the person or corporation charged with violating the statute. The term so construed obviously can embrace only a person who is or has been in the employ of the alleged violator.

This is further borne out by the definition of '' verified complaint '' in paragraph d of subdivision 5, as added by chapter 727 of the Laws of 1938. A verified complaint is defined as including a verified demand or notice of claim against a municipality. Obviously, only a person who asserts a claim in his favor for money damages can file a demand or notice of claim against a municipality.

The remaining terms used in subdivisions 7 and 8 also make it clear that the complaint procedure under those subdivisions is available only to employees and ex-employees. Notice of hearing is required to be given under subdivision 8 to '' any person or corporation affected thereby ''. This term has been strictly construed to mean only the employee filing the complaint and the person or corporation employing him (*Matter of Heany* v. *McGoldrick*, 286 N. Y. 38; *Campbell* v. *City of New York*, 291 N. Y. 461, *supra*). In the *Heany* case, it was held that even a fellow employee, who had failed to file a complaint of his own, was not a person '' affected thereby '' and hence it was held that he was not entitled to notice of the hearing (p. 44). A fortiori, it must be held that a stranger to the employment relationship is not a person '' affected '' within the meaning of the statute.

The statute provides for review of the determination of the fiscal officer by any " aggrieved " party but a stranger could not be "aggrieved" by the determination, since it could not possibly affect any right of action or any liability on his part. Hence, if a stranger were allowed to file a verified complaint as an interested person under subdivision 7, we would have the anomalous situation that he would not be entitled to a notice of hearing because he would not be a person " affected " and he would not be entitled to review any determination because he would not be " aggrieved " and, obviously, he could not seek a recovery as a " complainant " under subdivision 8 since he could not have any possible basis for a claim for loss of wages.

The decision of the Court of Appeals in *Campbell* v. *City of New York* (291 N. Y. 461, *supra*) is illuminating in this connection. The court there held that only an employee who had filed a complaint of his own could recover the difference between the wages received by him and the wages determined in the proceeding to be the prevailing rate of wages. If he had not filed a complaint of his own, he could not recover even though a complaint had been filed by his fellow employees. A fortiori, the filing of a complaint by one who is not an employee cannot serve as the basis for a recovery by an employee. The *Campbell* case makes it clear that the complaint contemplated by subdivision 7 is a complaint by an individual employee seeking relief for his own benefit.

It is thus apparent that the term " person interested " as used in subdivision 7 does not refer to persons who have a general interest in the wage rates but refers to the persons who are specially interested because they are the recipients of the wages, the sufficiency of which is in controversy.

As will be seen later, there are other provisions of the statute which provide for the protection of the public interest in the enforcement of the statute. Under section 4 of the Labor Law of 1897, as amended by chapter 567 of the Laws of 1899, and reamended by chapter 152 of the Laws of 1916: " Any citizen of this state may maintain proceedings for the suspension or removal of such officer, agent or employee who knowingly permits the violation of any of the provisions of this chapter ". This provision was originally applicable solely to the prevailing rate of wages statute (L. 1899, ch. 567). It has now been placed in section 210 of the Labor Law and has been made applicable to all the provisions of the Labor Law. The terms " person interested ", " person affected " and " complainant " in subdivisions 7 and 8 of section 220 stand in sharp contrast to the term " any citizen of this state " used in section 210.

This indicates a legislative intent to make the complaint procedure under subdivisions 7 and 8 a private remedy available only to employees, and to make the institution of a removal proceeding under section 210 the public remedy available to persons other than employees.

The petitioners argue that, if the complaint procedure is limited to employees, violations of the prevailing rate of wages statute may go unredressed because some employees may be unwilling or reluctant to file complaints against their employers. This argument underestimates the force of self-interest as an incentive to action. The books are full of cases of employees who filed complaints under the statute. There is no evidence that public employees are reluctant to file complaints if they believe they are being paid less than they are entitled to receive, particularly when they are protected by civil service regulations against arbitrary removal from employment.

The petitioners' argument also overlooks the fact that the complaint procedure is not the only sanction provided by the Legislature to assure compliance with the statute. The primary responsibility for compliance with the statute is placed by law upon the officer who is in charge of the work (Labor Law, § 220, subd. 3; § 223). An officer who violates the statute is declared to be " guilty of malfeasance in office ". He " shall be suspended or removed by the authority having power to appoint or remove [him] * * * Any citizen of this state may maintain proceedings for the suspension or removal of such officer " (Labor Law, § 210). The public officer may also be prosecuted for willful neglect of duty under section 1841 of the Penal Law (1906 Atty. Gen. 446).

Prior to the adoption of the provision authorizing a citizen to institute a removal proceeding in 1899, it had been held that any citizen could bring a mandamus proceeding to compel the public officer to do his duty and to pay the prevailing rate of wages upon public work under his supervision (*People ex rel. O'Brien* v. *Van Wyck*, 27 Misc. 439). It will be noted that this decision dealt with a mandamus proceeding against the officer or department head under whose supervision the work was being done, not with a proceeding against a fiscal officer to compel him to institute an investigation, as the petitioner erroneously argues. There was no provision in the statute *at* that time imposing a duty upon a fiscal officer to conduct an investigation. That provision came into the law much later, as a special remedy for employees, as we have already seen. The holding in the *O'Brien* case was in accordance with the

general principle that any citizen may maintain a mandamus proceeding to compel a public officer to do his duty (*People ex rel. Hofeller* v. *Buck,* 193 App. Div. 262, affd. 230 N. Y. 608; *Matter of Kahabka* v. *Schwab,* 205 App. Div. 368, affd. 236 N. Y. 595). As applied to the problem before us, this would mean that a mandamus proceeding could be maintained against the officer or board in charge of the work, not against the fiscal officer of the State or city. However, it may well be that, after the Legislature authorized the institution by any citizen of a removal proceeding (L. 1899, ch. 567), that became the exclusive remedy of a citizen who claimed that a public officer had violated the statute and a mandamus proceeding could no longer be maintained against the public officer. There is no need to decide that question here. We need only note that ever since 1899 the Legislature has expressly provided for a removal proceeding as the sanction to assure observance of the statute by public officers in charge of public work.

We are not here concerned with the question of whether the public remedy provided by the Legislature is an adequate or effective one; it is enough for us to observe, upon an analysis of the statute, that that is the remedy which the Legislature decided should be made available to the public.

It should also be borne in mind that, even in the absence of an authorized complaint, the fiscal officer is empowered under subdivision 7 of section 220, as added in 1927 (ch. 563), to institute an investigation "on his own initiative". As to public work anywhere in the State, except work done by or on behalf of cities, the fiscal officer referred to in the statute is the State Industrial Commissioner; as to cities, "the comptroller or other analogous officer" is declared to be the fiscal officer for the purpose of the statute (Labor Law, § 220, subd. 5, par. c). The Legislature apparently relied upon the conscientiousness of the State Industrial Commissioner and the city comptrollers and upon their initiative in instituting investigations on their own motion, whenever it appeared that public officers in charge of public work were violating the statute.

It is true that the exercise of discretion by the fiscal officer in deciding whether to institute an investigation upon his own initiative is not controllable by the courts by mandamus but neither is the exercise of discretion by the Attorney-General or by a District Attorney in deciding whether to institute enforcement proceedings of a penal character. At any rate, the question of the extent to which the action of the fiscal officer should be controlled by the courts is for the Legislature to decide. The Legislature has chosen to leave the question of

whether an investigation should be instituted solely to the discretion of the fiscal officer, except in the case of the filing of a complaint by an authorized person seeking a money recovery for himself, in which case the fiscal officer is required to take action. If the Legislature had intended to make it the absolute duty of the fiscal officer to institute an investigation whenever requested to do so by any citizen, it would have so provided. This the Legislature has not done; on the contrary, it has vested only in a narrow class of persons, the power to compel an investigation by the fiscal officer.

The fact that some of the petitioners are prospective applicants for employment upon the public work project does not give them any greater standing to compel an investigation by the comptroller under subdivision 7 than any other member of the public. It is true that they have a greater interest in the wage rates than the general public has but they are still not within the class of persons for whom the special complaint procedure under subdivision 7 was devised.

We are not concerned here with the question of the right of the petitioners to take action to compel the officers in charge of the work to comply with the prevailing rate of wages statute, but solely with the question of whether they have the right to proceed against the fiscal officer to compel him to act under subdivision 7. The petitioners and others similarly situated could, if they wished, bring a removal proceeding, or possibly a mandamus proceeding, against the Board of Education for whom the work was being done but in such a proceeding they would have the burden of pleading and proving a violation of the statute. That is very different from authorizing them, merely by filing a complaint, to compel the fiscal officer to institute an administrative investigation, in which the burden of investigation and proof would fall upon the officer. If the petitioners' view were accepted, the fiscal officer could be compelled to launch an administrative investigation and to hold a hearing whenever any workman, who asserted that he might wish to seek employment on the job, filed a complaint, no matter how remote the prospect of the employment of the workman might be. The fiscal officer might thus be required to undertake repeated investigations upon the basis of charges made by persons having no connection with the work, which might ultimately turn out to be unfounded.

These considerations may well have influenced the Legislature in its decision not to extend the complaint procedure under subdivision 7 to persons other than the employees on the job. The Legislature may also have been influenced by the fact that

most cases to which section 220 is applicable are cases involving contractors or subcontractors and there are adequate procedures in other subdivisions of the section to deal with such cases.

The statutory scheme with respect to public work carried on through contractors is much more complete than that with respect to the direct employment of workmen upon public work by public authorities. The primary purpose of section 220 was to protect workmen employed by contractors engaged in public work, rather than to protect direct employees of the public authorities. "Doubtless the Legislature in enacting and in amending section 220 of the Labor Law, had in mind, primarily and insistently, the need of providing protection against possible injustice on the part of the contractors in their dealing with their laborers, workmen and mechanics. That appears clearly from the language of the section and all its subdivisions " (*Matter of Gaston* v. *Taylor*, 274 N. Y. 359, 364, *supra*).

Subdivision 3 of section 220 was amended by chapter 731 of the Laws of 1933 and a new subdivision 3-a was added by chapter 300 of the Laws of 1935 so as to provide that, in every case in which it was proposed to let a contract for public work, a proper classification of the workmen to be employed and a schedule of the wages to be paid were to be determined by the fiscal officer prior to the advertisement for bids and were to be made a part of the specifications for the work. A contractor who paid less than the wages so determined was declared to be guilty of a misdemeanor and, for a second offense, his contract might be forfeited (§ 220, subd. 3).

Under these provisions of the statute, there is no need for a complaint by anyone in order to make it the duty of the fiscal officer to undertake an investigation of the prevailing rate of wages to be paid on the public work to be let out on contract. It should be noted that the cases from other jurisdictions cited in the dissenting opinion deal with the judicial review of determinations made under statutes governing the letting of contracts for public work. We need not decide here whether the class of persons entitled to review such determinations is as broad as that stated in the cited cases. That problem is entirely different from the problem before us. We are not concerned here with the question of who may maintain a proceeding to review a schedule of rates promulgated for work, not yet commenced, to be performed under a contract, but we are concerned only with the construction of a statute providing a special administrative proceeding with respect to work in progress, looking to a money recovery by employees claiming to have been underpaid.

The Legislature has not seen fit to adopt requirements with respect to public work projects undertaken directly by the public authorities analogous to those provided for contract work. There is no provision in the statute requiring the fiscal officer to prepare a schedule of the prevailing rate of wages with respect to a public work project to be performed by using the services of direct employees. As the Court of Appeals pointed out in *Matter of Corrigan* v. *Joseph* (304 N. Y. 172) the protection of direct employees has been left chiefly to the operation of the civil service system. The Court of Appeals held in the cited case that section 220 is not applicable to employees in the graded civil service. If section 220 were applied to such employees, the court reasoned, the civil service merit system would be disrupted and employees would be shifted from one salary grade to another, in violation of the Civil Service Law, as the prevailing rate of wages changed in accordance with changes in economic conditions. In view of the almost complete coverage of public employment by the graded civil service, the application of section 220 to public employment is of vanishing significance. As a matter of fact, this proceeding could have been disposed of upon the ground that section 220 was not applicable at all, if the respondent had pleaded and proved at Special Term what he now advises us in his brief, namely, that all the employees of the Board of Education who performed the work in controversy were "graded Civil Service employees of the competitive class working within their classifications".

The fact that the application of section 220 to direct public employment is now of little importance may well explain why the Legislature has not provided for an administrative determination of the prevailing rate of wages in advance of the doing of the work, in direct employment cases, as it has in contract cases. At any rate, whether administrative remedies should be made available to persons other than employees in direct employment cases is a matter for the Legislature to decide.

Under the present statute, the petitioners had no standing to compel the respondent to institute an investigation under subdivision 7 and he properly dismissed their so-called complaint and the Special Term properly dismissed their petition under article 78.

The order of the Special Term should be affirmed, with costs.

FOSTER, P. J. (dissenting). Petitioners appeal from a dismissal of a proceeding in the nature of mandamus and certiorari brought by certain unemployed workmen and their unions under article 78 of the Civil Practice Act and section

220 of the Labor Law. Appellants filed a verified complaint with the respondent fiscal officer of the Board of Education, City of Kingston which charged that the Education Board was violating section 220 of the Labor Law by employing persons on a public work at below the prevailing rates of wages. Respondent dismissed the complaint, apparently on the ground that since appellants were not employees of the board neither the individual appellants nor their unions had any standing to question the petitioners' alleged payment of substandard wages. The Special Term sustained the respondent's position and stated clearly in its decision that the statute protects only those employed on municipal works, and grants, to such individuals who may feel aggrieved the right to proceed in accordance with the procedure provided by statute, but the statute does not extend such right to other individuals or organizations.

We begin with the basic position that the public policy of the State, as specifically provided in section 220 of the Labor Law, is that workmen employed upon a public work shall be paid the prevailing rate of wages in the locality where the work is being performed. To implement this basic requirement the statute further provides:

"7. The fiscal officer as herein defined may, on his own initiative, and must, on a verified complaint in writing of any *person interested,* cause an investigation to be made to determine the prevailing rate of wages in the same trade or occupation in the locality within the state where such public work is being performed   *   *   *   The fiscal officer in such investigation shall be deemed to be acting in a judicial capacity, and shall have the right to issue subpœnas, administer oaths and examine witnesses.   ·*   *   *   Such fiscal officer shall make an order or determination not later than six months after the filing of such verified complaint.

" 8.   *   *   *   Upon the entry of such order affecting either the hours of labor or rate of wages any party to the proceeding aggrieved thereby may review the said proceedings by a writ of certiorari within thirty days from the notice of the filing of the said order in the office of the fiscal officer. When a final determination has been reached, if the determination is in favor of the complainant and involves or relates to the rate of wages paid on such public work, the complainant or any other *person affected* may within three months after the service of notice of the filing of said final order institute an action against the person or corporation found violating this act for the recovery of the difference between the sum actually paid and the amount which should have been paid as determined

by said final order, from and after the date of the filing of said verified complaint or of filing report of investigation made on his own initiative with the fiscal officer as hereinbefore provided." (Italics supplied.)

In his answer to the original petition herein respondent alleged that the work provided by the Board of Education of the City of Kingston on Public School No. 8 was performed by regular civil service employees of the said Board of Education. Such civil service employees were apparently classified as maintenance workers, and it is charged that they performed the work in question at wages below the prevailing rate of wages paid to workmen and mechanics in the same locality. The respondent also alleged that the complainants herein were not persons interested within the meaning of section 220 of the Labor Law and therefore had no status to bring the proceeding. The decision of the respondent was sustained by the Special Term, and hence the factual merits of the proceeding were never explored. The sole question before us is whether the term " person interested " has been correctly construed. The statute itself is devoid of definition on this subject.

I am inclined to the view that the statute in this aspect has been too narrowly construed by the respondent and the Special Term. Obviously section 220 of the Labor Law constitutes a statute of broad public policy and interest and it seems rather unreasonable to believe that the Legislature intended to foreclose the right of any person whose economic status and livelihood might be jeopardized to question the failure of its application by the public authorities. Plainly the statute is remedial in character and hence it is almost axiomatic that it should be liberally construed. If a demand for its enforcement is to be limited to those who have accepted work on public projects at substandard wages there is a clear danger that the public policy inherent in the statute may not be heeded, and this danger will exist despite the fact that the statute itself provides specifically that the receipt of substandard wages by an employee is not to constitute a waiver (subds., 8-a, 8-b). There is a reasonable probability at least that if a workman accepts substandard wages in the first instance he is not apt to complain later; or at least there is a probability that some workmen and employers may connive to evade the statute and thus injure the interests of other workers.

There is a paucity of authority in this State on the precise issue of interpretation involved here, although it was held in the case of *People ex rel. O'Brien* v. *Van Wyck* (27 Misc.

439) that a person not employed on a public works project had a right to compel a fiscal officer to investigate and establish prevailing rates of wages.

*Campbell* v. *City of New York* (291 N. Y. 461) is cited to sustain the decision herein but in our view the issue involved here was not passed upon in that case.

Under similar, though not identical statutes, the courts of some sister States have sustained the standing of a union to bring a proceeding in the nature of the one before us (*Denver Bldg. & Constr. Trades Council* v. *Vail,* 103 Col. 364; *Industrial Comm.* v. *Colorado State Federation of Labor,* 107 Col. 206; *El Paso Bldg. & Constr. Trades Council* v. *Texas Highway Comm.,* 231 S. W. 2d 533 [Tex.], rev. on other grounds *sub nom. Texas Highway Comm.* v. *El Paso Bldg. & Constr. Trades Council,* 149 Tex. 457; *Carpenters Local No. 1650* v. *City of Lexington,* 248 S. W. 2d 407 [Ky.]). I think that some of the language used by the court in the first Colorado case cited might well apply here. The court there said (p. 369): '' No single workman who hopes or desires to be employed on one of these projects could be expected to go to the trouble and expense of bringing an action individually. In the light of the practical situation, and in view of the obvious intent of the General Assembly, we hold that the trades council has a sufficient interest in the subject matter to enable it to institute the proceedings in the case at bar.'' This language accords with the basic fundamental rules of statutory construction that words are understood to have their common and ordinary meaning unless a clear indication to the contrary appears, and it would certainly seem that working men, or those representing them, have a concern in a project where others are employed for less than the prevailing rate of wages for the same type of work in the locality.

As against this reasoning there is some difficulty in reconciling the statutory language between a *person interested* and a *person affected.* It may be noted from the statute as already quoted that when a final determination has been reached, if the determination is in favor of the complainant and involves the rate of wages paid, the complainant or any other person affected may institute an action against the person or corporation violating the act for the recovery of the difference between the sum actually paid and the amount that should have been paid. Although the term '' interested person '' may be, and I think should be, broadly and liberally construed, for obvious reasons the same broad construction cannot be applied to the term '' person affected.'' However this presents no insuper-

able obstacle to giving the term "person interested" a liberal construction. Since the Legislature itself has made a distinction in language that distinction may be justly given effect. Any person interested may bring the proceeding but only those persons affected as employees may recover the difference between the wages paid and those which should have been paid. This construction does no violence to the language of the statute as I read it.

It is urged that the question is moot. It may be so far as the actual question of wages is concerned because perhaps no one will bring an action for the payment thereof, but the principle certainly is not moot. It involves a question of such paramount public importance that the issue should not be discarded on that ground. As I have heretofore indicated the real merits of the controversy have never been factually explored and decision is limited to the narrow issue stated. I think the petitioners-appellants were interested parties within the meaning of the statute, and that the order should be reversed on the law.

COON and GIBSON, JJ., concur with HALPERN, J.; FOSTER, P. J., dissents in an opinion, in which BERGAN, J., concurs.

Order affirmed, with $10 costs.