Chief Judge Fuld.
Whether or not this action—brought by employees of the Village of Port Chester against their employer —was timely commenced is the question posed by this appeal. Some 18 years ago, the 58 plaintiffs — employed by the Village in road maintenance, park and sanitation work—concluded that they were being paid at less than the prevailing wage rates for such occupations. They began proceedings in 1950 before the State Industrial Commissioner—in accordance with subdivisions 7 and 8 of section 220 of the Labor Law—to have him determine the prevailing rates so that, pursuant to the same statute, they might assert a claim against the Village for the deficiency. Subdivision 8 of section 220 provides that, when the *198 prevailing rate has been determined, any aggrieved party may challenge the determination in an article 78 proceeding “ within thirty days from the notice of the filing of the said order in the office ’ ’ of the fiscal officer making the determination and that, “ [w]hen a final determination has been reached, if the determination is in favor of the complainant, ** * * [he] or any other person affected may within three months after the service of notice of the filing of said final order ’ ’ bring an action against the employer ‘ ‘ for the recovery of the difference between the sum actually paid * * * and the amount which should have been paid ”.[1]
After extensive hearings, the Industrial Commissioner found that the prevailing rate had not been paid and, some time after such determination had been made, the plaintiffs instituted this action to recover the amount to which they deemed themselves entitled. Although it did not mention the matter in its answer, the Village now defends primarily on the ground that the suit was not commenced within the time prescribed by section 220.
Consideration of the chronology of the steps taken will prove helpful in passing upon the issue thus raised.
On October 3,1963, after many years of fruitless negotiations with the Village and of intermittent hearings in the Labor Department—punctuated by delays found by the hearing examiner to have been occasioned by the Village — the Industrial Commissioner filed his “ Order and Determination ” fixing *199 the prevailing wage rates at amounts higher than the wages the plaintiffs had been receiving.
A month later, on November 2, 1963, the Village instituted an article 78 proceeding—which was heard by the Appellate Division for the Third Department—to review the Commissioner’s determination. The Appellate Division decided that case in early July, 1964, in favor of the employees, and its order confirming the Commissioner’s determination was served upon the Village on July 29. Several weeks thereafter, on August 21, the Village made a motion (in the article 78 proceeding) for reargument or for leave to appeal to the Court of Appeals. On October 15, the court denied the Village’s motion in its entirety; so far as appears, no order was entered on that decision.
Then, about two months later, on or about December 14, 1964, the plaintiffs began this action against the Village in the Supreme Court, Westchester County. The complaint, alleging a separate cause of action for each of the parties involved, demands back pay and interest from 1950 through 1963; the total amount sought is in excess of $400,000. The defendant interposed an answer on January 12, 1965.
The commencement of the action did not, however, put an end to the Village’s efforts to upset the determination of the Industrial Commissioner. On February 24, 1965, it moved in this court for leave to appeal in the article 78 proceeding. The motion was denied on March 18 (15 N Y 2d 485) and thereafter, on October 11, a petition to the United States Supreme Court for certiorari was likewise denied.
After the joinder of issue and several unsuccessful motions by the plaintiffs for summary judgment, one of the plaintiffs, Martin Bucci, moved for ‘ ‘ partial ’ ’ summary judgment on his own cause of action, avowedly as a test. The defendant Village made a cross motion—pursuant to CPLR 3211 (subd. [a], par. 7) —to dismiss the complaint for failure to state a cause of action. The court at Special Term granted the cross motion on the ground that the three-month period specified in section 220 began to run on October 3, 1963, the date on which the Industrial Commissioner filed his order fixing the prevailing wage rates, and that the plaintiffs ’ ‘ ‘ Failure to allege ’ ’ commencement of the action within such specified period rendered the complaint “ insufficient ”. Since the motion for “ partial ” *200 summary judgment had not been disposed of, the court resettled its order to recite that it was dismissed as “ moot.” On appeal, a divided Appellate Division, for the Second Department, affirmed without opinion. However, the dissenting justice noted that it was the majority’s view that the three-month limiting period was to be computed from July 29, 1964, the day on which the Village was served with the Appellate Division order confirming the determination of the Industrial Commissioner.
It would be more than ironic if, after 18 years of struggle, in which each side came to know everything about the other’s case, the plaintiffs’ final steps toward the enforcement of their claims were to founder on the supposed obstacle of a three-month time limit for the commencement of action. On the facts before us, section 220 of the Labor Law may not be construed to require so bizarre a result. On the construction of the statute which impresses us as the most compelling, the three-month period had not yet expired when the plaintiffs began their action in December of 1964; the time did not begin to run, at the earliest, until October 15, when the Village’s motion in the Appellate Division for reargument or leave to appeal in the article 78 proceeding was denied. Indeed, since no order was apparently entered on that decision, there might even be warrant for concluding that the three months started to run at a still later time, on March 18, 1965, when this court denied leave to appeal. However, assuming—and adopting the view most favorable to the defendant Village — that an order was actually entered on the October 15, 1964 decision, not until then was there the “ final determination” or “final order ” from which, in the somewhat indistinct language of the statute, the three-month period was to be measured.[2]
*201 We must, of course, give the words, “final determination” and “final order,” the reasonable meanings they take on in the context in which we find them. We are here required to give effect to a unique statutory scheme, one that has as its entire aim the protection of workingmen against being induced, or obliged, to accept wages below the prevailing rate from a public employer. This court has more than qnce noted that section 220 must be construed with the liberality needed to carry out its beneficent purposes. (See, e.g., Matter of Gaston v. Taylor, 274 N. Y. 359, 364; Austin v. City of New York, 258 N. Y. 113, 117; Matter of Smith v. Joseph, 275 App. Div. 201, affd. 300 N. Y. 516; Matter of Cocchiarella v. Joseph, 131 N. Y. S. 2d 247, 253, affd. 286 App. Div. 1076.) Speaking of section 220, the court wrote in the Austin case (258 N. Y., at p. 117): “ The present statute is an attempt by the State to hold its territorial subdivisions to a standard of social justice in their dealings with laborers, workmen and mechanics. It is to be interpreted with the degree of liberality essential to the attainment of the end in view.”
In the plan of the statute, the administrative determination of the prevailing rate of wages becomes the foundation for the workman’s suit against his employer. It is important to note that the lawsuit itself must be brought by each aggrieved employee as an individual. (See Matter of Yerry v. Goodsell, 4 A D 2d 395, 400-401, affd. 4 N Y 2d 999.) It seems obvious that the statute, having this basic procedural scheme, does not require the workman to undertake the expense and other burdens of a lawsuit so long as any legal proceedings are under way in which the employer seeks to challenge the underlying administrative determination. The terms, “final determination” and “ final order,” in subdivision 8 of section 220 must refer to an event that puts an end to any such pending attack—whether it be the original attack in the article 78 proceeding, allowed to the employer by the statute, or a subsequently launched attack by way of a motion for reargument or an appeal. To the employee it makes no difference by what means, or at what moment, the legal prop to his lawsuit—namely, the administrative finding—is knocked out from under him. It would be most unreasonable, under a statute designed for the relief of *202 unprotected workmen, to require the employee to begin an action for recovery of wages due him before he is assured that the determination and order of the fiscal officer have, in terms he understands, become ‘ ‘ final ’ ’.
The foregoing analysis leads to the only interpretation of the time-limiting clause of section 220 which avoids doing violence to the purposes of the statute while remaining fully faithful to the plain meaning of its language. Thus, the ‘ ‘ finality ’ ’ of a determination, in the sense intended by the draftsmen of section 220, is obviously a function, in part at least, of what the employer chooses to do. Whenever an order is made that could mark the end of the employer’s challenge to the administrative finding — and a copy is served by or on the employee — the three-month period starts to run. Unless the employer chooses to do more, there is, at that point, a “final determination”. The administrator’s order itself can be the occasion for the beginning of the measuring period, if the employer decides not to contest the matter any further. But if, before the three months have expired, the employer takes further legal steps, of whatever sort, to upset the administrative determination, then, a new reckoning of the three-month period becomes essential. Of necessity, it begins when the employer’s latest attack is ended by a further order. Thus, if the employer exercises its right to bring an article 78 proceeding—which, most significantly, it must do within no more than 30 days after the entry of the administrative order (Labor Law, § 220, subd. 8)—the three-month period starts anew when an order is entered, and served, at the conclusion of the hearing in that proceeding.
That was the situation which existed in this case on July 29, 1964. However, if, before the newly begun three-month period has run, the employer again seeks to annul the administrative finding—by reargument or appeal, for example — the workman is under no continuing necessity to begin a possibly futile lawsuit to save his rights. His time to sue commences afresh when the new step taken by the employer is concluded. In the present case, this occurred when the employer moved on August 21, 1964, in the Appellate Division to reargue, or obtain leave to appeal from, that court’s determination in the article *203 78 proceeding. Since that application was not decided until October 15, it was only on that date that a new three-month period began. As already indicated, before that three-month period had passed, the summons and complaint in this action had been served.
This interpretation not only is compelled by the wording of section 220 and the rationale underlying its enactment but is consistent with the general scheme of our statutes governing reargument and appeals. In the normal case, an employer against whom an adverse decision has been rendered at any stage of the section 220 contest will have to pursue his next remedy within much less than three months—usually, within 30 days (e.g., Labor Law, § 220, subd. 8; CPLR 5513). If the employer has not moved within the time allowed, the employee has some 60 days left for initiating his lawsuit. There are, consequently, firm and manageable limits on the litigation timetable.
Having determined that this action was, in fact, timely commenced, we may turn to the procedural quéstion whether it is necessary, in the present posture of the case, for the plaintiffs to be put to the formality of amending their complaint to allege that fact. Such an allegation by the plaintiffs would, in any ease, only be needed if we were to regard the three-month time limit in section 220 as " integral with the cause of action” rather than as a waivable “ Statute of Limitations.” (Romano v. Romano, 19 N Y 2d 444, 447.) We need not, however, decide between these categories. Assuming, without deciding, that the limitation is ‘ ‘ integral ’ ’ in the Romano sense, it is indisputable that the time requirement was satisfied by the commencement of the action in December, 1964. The ritual of alleging timeliness, at this advanced stage of the litigation, would manifestly be an empty one and there is no need to amend the complaint for this purpose. (CPLR 104, 3026; see Foley v. D’Agostino, 21 A D 2d 60, 65; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 3026.01-3026.04.)
As to the defendant’s contention that the plaintiffs, as a condition precedent to maintaining their action, were required to serve certain notices under the provisions of several statutes (Labor Law, § 220, subd. 5, par. f; Village Law, § 341-b; *204 General Municipal Law,. § 50-e), it is enough to say that no one of those provisions has either relevancy or application to actions brought pursuant to subdivision 8 of section 220.[3]
Finally, we simply and briefly note—with respect to the plaintiff Bucci’s request that we direct the grant of his motion for summary judgment—that, since the courts denied that motion as ‘ ‘ moot ’ ’, we deem it more appropriate that we remit the matter to Special Term for disposition.
The order appealed from should be reversed, with costs in all courts, the defendant’s cross motion to dismiss the complaint denied and the matter remitted to the Supreme Court, Westchester County, for disposition of the plaintiff Bucci’s motion for summary judgment.
Judges Burke, Scileppi, Bergan, Keating, Breitel and Jasen concur.
Order reversed, with costs in all courts, and matter remitted to Supreme Court, Westchester County, for further proceedings in accordance with the opinion herein.

. Subdivision 8 of section 220, insofar as relevant, reads as follows: “ the fiscal officer shall determine the issues raised thereon and shall ■ make and file an order in his office stating such determination, and forthwith serve a copy of such order, with a notice of the filing thereof, upon the parties to such proceeding, personally or by mail. Upon the entry of such order * * * any party to the proceeding aggrieved thereby may review the said proceedings pursuant to article seventy-eight of the civil practice law and rules within thirty days from the notice of the filing of the said order in the office of the fiscal officer. When a final determination has been reached, if the determination is in favor of the complainant and involves or relates to the rate of wages paid or the supplements provided on such public work, the complainant or any other person affected may within three months after the service of notice of the filing of said final order institute an action against the person or corporation found violating this act for the recovery of the difference between the sum actually paid or provided and the amount which should have been paid » * * as determined by said final order, from and after the date of the filing of [the employee’s complaint that initiated the wage determination].”

. In this view, too, it will be unnecessary to consider whether the action was “ premature,” since it was brought two months after the October date. The question of prematurity would arise if we took March 18, 1965 as the starting point of the three-month period; but, if we did this, we would agree with Justice Benjamin, in his dissent below, that any possible objection on such grounds was waived by defendant’s failure to assert it prior to the appeals. Moreover, it may well be that the statute may be read as permitting the action to be commenced before the beginning of the three-month period, though not after its expiration.

. Nor is there any substance to the Village’s assertion that the procedures and findings made by the Industrial Commissioner are still open for review in the present action. The quick answer is that the propriety and correctness of the Commissioner’s decision have been concluded by the article 78 proceeding.