*399 OPINION OF THE COURT
Levine, J.
The facts of this controversy are essentially undisputed. In 1992, petitioner Cayuga-Onondaga Counties Board of Cooperative Educational Services (BOCES) entered into an agreement with one of its member school districts, the Auburn City School District, to provide the labor for a lighting improvement project consisting of changing the ballasts in the fluorescent lighting to more energy efficient ballasts at all school buildings throughout the district. BOCES hired 41 full-time employees of the Auburn school district to work after hours in performing the installation. BOCES applied to the Cayuga County Civil Service Commission and obtained a civil service classification of these workers as temporary, seasonal laborers of BOCES. Their BOCES pay rates were the same as they received from the Auburn school district, but they were not compensated at overtime rates, which they would have received had they performed the work directly for the school district. The Auburn City School District reimbursed BOCES for its payments to the workers on the ballast replacement project.
After receiving informal complaints from workers in the ballast replacement project, an official of the area’s electrical workers union (which did not represent the workers involved) filed a formal complaint with the State Department of Labor averring that BOCES was required to pay the prevailing wage rate for electricians to its employees on the project. Following a Department field investigation, the Commissioner of Labor issued a notice of hearing to BOCES in March 1994 on allegations that BOCES failed to pay the prevailing wages and supplements to 41 of its employees on the Auburn school district lighting project, in violation of Labor Law § 220.
At the conclusion of the hearing, the Hearing Officer issued a report and recommendation. The Hearing Officer found that the arrangement between the Auburn City School District and BOCES was made to avoid the school district’s liability for payment of overtime wages to its employees working on the project; that BOCES was acting in the capacity of a general contractor for the school district on the project; and that the type of work performed by the 41 BOCES employees was generally performed by electricians. The Hearing Officer determined that the ballast replacements constituted a public work project and that BOCES violated Labor Law § 220 in failing to pay its workers prevailing electricians’ wage rates. She further *400 ruled, that BOCES was not exempt from the requirements of Labor Law § 220 by reason of its employees’ civil service classifications as temporary seasonal laborers.
The Commissioner of Labor adopted the Hearing Officer’s report in all respects and ordered a further hearing for the purpose of determining the amount of underpayment, any civil penalty and willfulness. The Appellate Division confirmed the determination and dismissed the petition (224 AD2d 989). We granted BOCES permission to appeal.
BOCES’ primary grounds for reversal are that the Commissioner of Labor lacked jurisdiction to make the determination herein because a timely notice of claim against BOCES in compliance with Education Law § 3813 (1) was never filed by the Department of Labor and because the Commissioner failed to commence formal proceedings against it through the service of notice of hearing until after the one-year Statute of Limitations of Education Law § 3813 (2-b) had expired. We find these arguments unpersuasive.
In determining the applicability of the three-month notice of claim requirement of Education Law § 3813 (1) to statutory or nonjudicial proceedings involving school districts, school boards and boards of cooperative educational services, as well as parallel notice of claim requirements when such proceedings involve other municipal units of government, our Court has distinguished between proceedings "which on the one hand seek only enforcement of private rights and duties and those on the other in which it is sought to vindicate a public interest; the provisions of subdivision 1 of section 3813 are applicable as to the former but not as to the latter” (Union Free School Dist. No. 6 v New York State Human Rights Appeal Bd., 35 NY2d 371, 380, rearg denied 36 NY2d 807).
Thus, in Union Free School Dist. No. 6 (supra), the issue was the validity of a provision of a collective bargaining agreement mandating inferior treatment of pregnancy and child birth absences from absences based on other physical or medical disabilities, challenged as illegal sex discrimination. We held that although the "proceeding was triggered by the complaint of this one teacher”, and the monetary relief granted would benefit the complainant and teachers similarly situated, those "advantages * * * flow[ed] as an appropriate and intended consequence of the vindication by the division, acting on behalf of the public, of the public’s interest in the elimination of discrimination based upon sex — a public interest duly declared by legislative enactment” (35 NY2d, at 380).
*401 Contrastingly, in Mills v County of Monroe (59 NY2d 307, 312, cert denied 464 US 1018) a plenary civil damage action authorized under State and Federal antidiscrimination statutes seeking only personal redress for "allegations of actionable conduct on the part of the county refer[able] only to conduct that relates to [the plaintiff],” the filing of a notice of claim, as generally required under County Law § 52 (1), was held to be a condition precedent to the suit.
The instant proceeding initiated by the Commissioner of Labor to enforce prevailing wage payment requirements for public work projects under section 220 of article 8 of the Labor Law falls well within the vindication of a public interest category, for which statutory notice of claim requirements are inapposite.
First, the mandate that laborers, workers and mechanics employed in public work projects be paid the wages "prevailing” in their trade or occupation in the locality is not merely of statutory derivation but has its underlying basis in article I, § 17 of the State Constitution. The prevailing wage requirement was first enacted in legislative form in 1894 (L 1894, ch 622; see, Report of Temp St Commn on Constitutional Convention of 1967, Housing, Labor and Natural Resources, at 80). In response to this Court’s decision in People ex rel. Rodgers v Coler (166 NY 1), which partly invalidated the 1894 law, the State Constitution was amended in 1905 to authorize prevailing wage legislation (Report of Temp St Commn on Constitutional Convention of 1967, op. cit, at 80).
The prevailing wage/public work requirement was retained as a constitutional imperative in its present form in the 1938 State Constitution. Constitutional Convention Delegate (and State Senator) Dunnigan, a proposer of its retention, argued that inclusion of the prevailing wage mandate in the Constitution was necessary because "it has become a fixed principle in our society, which should be embodied in our organic law so as to insure its continuance [and] * * * because it should assume constitutional proportions so that this policy of state may be manifest to labor and industry as a principle of state” (3 Revised Record, 1938 Constitutional Convention, at 2204).
Labor Law § 220, in content, structure and purpose confirms that a proceeding such as this, brought by the Commissioner of Labor to enforce the statutory and constitutional mandate, has as its overriding goal the vindication of a public interest rather than just to provide a forum in a particular case for the *402 adjudication of a claimed personal statutory right, as in Mills v County of Monroe (supra) (see also, Board of Educ. v New York State Div. of Human Rights [Arluck], 44 NY2d 902, 904, rearg denied 45 NY2d 838; Matter of Board of Educ. [Wager Constr. Corp.], 37 NY2d 283). Section 220 has been characterized as "an attempt by the State to hold its territorial subdivisions to a standard of social justice in their dealings with laborers, workmen, and mechanics” (Austin v City of New York, 258 NY 113, 117 [Cardozo, Ch. J.] [emphasis supplied]).
The statutory procedures, powers and duties of the Commissioner and available remedies and sanctions under section 220 and the other provisions of article 8 of the Labor Law all have the earmark of a powerful administrative mechanism for the enforcement of a strong public policy, over which a private complainant has no control. Except for New York City’s public work projects, the Commissioner of Labor is required to ascertain prevailing wage rates on all public work performed in the State, irrespective of whether affected workers have complained of a violation of the statute (Labor Law § 220 [3]). The Commissioner is riot limited to responding to a formal, verified complaint of an "interested person” employed in the performance of a public work, but "may [as in the instant case] on his [or her] own initiative cause a compliance investigation to be made” (Labor Law § 220 [7] [emphasis supplied]). The Commissioner determines whether to hold a formal statutory hearing to adjudicate any violation preliminarily disclosed through the compliance investigation (Labor Law § 220 [8]). The Commissioner must investigate "the willfulness of the alleged violation” (Labor Law § 220 [7-a]) — obviously an issue entirely independent of the resolution of the claims of individual workers to additional remuneration up to the appropriate prevailing wage rate. A willful violation carries criminal sanctions (Labor Law § 220 [3]), and a second administrative adjudication of a willful violation within a six-year period renders the violator ineligible for any award of a public work contract for five years (Labor Law § 220-b [3] [b]). Moreover, even in the absence of a willful violation, upon a determination of a prevailing wage rate violation, the Commissioner is authorized not only to grant remedial relief to affected workers, but may also impose a civil penalty of up to 25% of the total additional wages and supplements due, payable to the State (Labor Law § 220 [8]).
All of the foregoing potent tools available to the Commissioner of Labor under section 220 and other provisions of Labor *403 Law article 8 to enforce the public policy of the State, for the payment of prevailing wages on all public work projects, may be exercised independently of the position or even existence of a private complainant. Thus, proceedings under section 220 are the antithesis of proceedings for the enforcement of private rights, statutory or otherwise. Subjecting the Commissioner’s jurisdiction under section 220 and companion sections of Labor Law article 8 to the three-month notice of claim requirements of Education Law § 3813 (1) would drastically weaken the Commissioner’s ability to enforce the strong prevailing wage policy of the State against school districts. Thus, prevailing wage enforcement proceedings under Labor Law § 220 constitute instances where the public "interests in their resolution on the merits override [a school district’s or BOCES’] interest in receiving timely notice before commencement of an action” (Mills v County of Monroe, supra, 59 NY2d, at 311), and the Commissioner’s failure to file a notice of claim under Education Law § 3813 (1) is not preclusive.
Likewise, in enforcement proceedings under Labor Law § 220 or other provisions of article 8 of that statute, the Commissioner of Labor is not bound by the one-year Statute of Limitations of Education Law § 3813 (2-b). All of the public policy considerations for finding that Education Law § 3813’s notice of claim requirement is inapplicable to these proceedings are equally valid with respect to the Statute of Limitations set forth in that section. We have already held that a procedural bar to the suit of a private individual may not preclude a State administrative agency from enforcement proceedings "vindicating] a public right to protection against conduct which the Legislature has found is inimical to the welfare of the People of the State” (Matter of New York State Labor Relations Bd. v Holland Laundry, 294 NY 480, 495 [litigation between employer and employees not a res judicata bar against State Labor Relations Board action covering the same subject matter], rearg denied 295 NY 568).
Moreover, applying either the notice of claim or Statute of Limitations provisions of Education Law § 3813 to prevailing wage law enforcement proceedings would conflict with (1) the three-year period given the Commissioner of Labor within which to initiate enforcement proceedings under Labor Law § 220-b (2) (for withholding amounts due the contractor or subcontractor); (2) the authority of the Commissioner of Labor to docket an administrative order determining liability for failure to pay prevailing wages as a money judgment, without *404 commencing a plenary action (Labor Law § 220 [8]; § 220-b [2] [f]); and (3) various periods of limitation contained in Labor Law article 8 for the commencement of civil actions against violators to recover the deficiencies in payment of prevailing wages, all of which are measured from the date of the final administrative determination of a prevailing wage violation by the Commissioner of Labor (such as challenged here) after the completion of judicial review, if any (see, Labor Law § 220 [8]; § 220-b [3] [a]; Bucci v Village of Port Chester, 22 NY2d 195, 203-204 [the municipal notice of claims statutes have no "relevancy or application to actions brought pursuant to subdivision 8 of section 220”]). Since notice of claim requirements have no relevance to article 8 civil actions (Bucci v Village of Port Chester, supra), a fortiori they have no relevance to the Commissioner’s enforcement proceedings (as in the instant case) upon which the civil actions are based.
In equating this enforcement action with the private damages action at issue in Mills, the dissent ignores the breadth of the statutory enforcement tools available to the Commissioner, the independent limitations periods for administrative enforcement actions contained in the Labor Law, the limitations periods for statutory civil actions which are dependent on the administrative determination, and the controlling precedential effect of Bucci (supra) here, that since notice of claims requirements are not applicable to these Labor Law civil actions they cannot, a fortiori, be applicable to the administrative enforcement proceedings upon which those actions depend.
We also reject BOCES’ alternative argument for reversal, that because the 41 Auburn school district employees hired by BOCES to perform the ballast replacements were classified by the Cayuga County Civil Service Commission as temporary seasonal employees of BOCES, they fall within the common-law exemption from the statutory prevailing wage rate mandate for classified and graded public employees (see, Matter of Corrigan v Joseph, 304 NY 172, rearg denied 304 NY 759, cert denied sub nom. Remelius v Joseph, 345 US 924; Matter of Buffalo Bldg. Trades Council v Board of Educ., 36 NY2d 782; Wood v City of New York, 274 NY 155). Because the 41 workers were ungraded employees of BOCES, awarding them increases in remuneration to the level of prevailing wage rates would not effectively grant them a promotion to above-grade salary levels. Hence, no violation of Civil Service Law principles of merit and fitness promotions are implicated by application of Labor Law § 220 here, and the exemption does *405 not apply (see, Matter of Gaston v Taylor, 274 NY 359, 363; cf., Matter of Corrigan v Joseph, supra).
All other issues raised here were unpreserved and have not been considered.
Accordingly, the Appellate Division’s order should be affirmed, with costs.
Ciparick, J. (dissenting). Because we conclude that a notice of claim should have been served on petitioner pursuant to Education Law § 3813 (1), we would reverse the order of the Appellate Division. Therefore, we respectfully dissent.
Respondent, Commissioner of Labor, initiated the underlying proceeding pursuant to Labor Law § 220 (7) to determine whether petitioner, Cayuga-Onondaga Counties Board of Cooperative Educational Services (BOCES), paid 41 employees of the Auburn City School District and Moravia Central School District (collectively, Auburn) prevailing wages for the ballast replacement work performed in school buildings in those districts.
The Hearing Officer designated by the Commissioner found, as a matter of fact, that the "[e]mployees hired by [petitioner] received the civil service classification of laborer [and a]ll of the 41 employees were appointed by the Cayuga County Civil Service Commission as seasonal laborers employed by BOCES.” The Hearing Officer ruled, as a matter of law, that since BO-CES was acting as a contractor by performing work for a legal entity other than itself, the "State Constitution (Art I, § 17) and Labor Law § 220 require that workers engaged on such public work receive prevailing wages.” Thus, the Hearing Officer concluded that Auburn "used BOCES to avoid paying overtime wages and benefits to its employees” and that BO-CES, by hiring the Auburn employees as seasonal workers, did not pay the prevailing rate of wages. The Hearing Officer directed BOCES to pay the prevailing wage rates or provide supplements in accordance with Labor Law § 220 (8). Respondent Commissioner adopted and confirmed the Hearing Officer’s factual findings and conclusions of law, and ordered a further hearing to determine (1) the amount of underpayments, (2) whether to impose a civil penalty and (3) the willfulness of the Labor Law violations. The Appellate Division confirmed respondent’s determination (see, Matter of Cayuga-Onondaga Counties Bd. of Coop. Educ. Servs. v Sweeney, 224 AD2d 989).
We do not quarrel with the majority’s analysis that the principles embodied in Labor Law § 220, derived from article I, *406 § 17 of our State Constitution, reflect the State’s policy and strong public interest that laborers, workers and mechanics employed in public work projects be paid "prevailing wages.” However, we disagree that an enforcement action brought pursuant to the administrative procedures outlined in Labor Law § 220 (7) and (8) excuses the Education Law’s express statutory notice of claim requirement which enjoins the prosecution or maintenance of any "action or special proceeding, for any cause whatever * * * relating to * * * the rights or interests of any district or any such school * * * against any * * * board of cooperative educational services * * * unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim” (Education Law § 3813 [1] [emphasis added]; see, Mills v County of Monroe, 59 NY2d 307, 309, cert denied 464 US 1018).
In Mills (supra), the Court determined that plaintiffs failure to comply with the pertinent notice of claim requirement was fatal to her employment discrimination suit. While recognizing the narrow, judicially crafted exception to notice requirements in actions brought to vindicate an important public interest, generally applied in the context of civil rights violations, the Mills Court drew an important, distinguishing line. There, plaintiff alleged that defendant, County of Monroe, impermissibly terminated her employment based on race and national origin in contravention of Executive Law § 296 and 42 USC § 1981, statutes which provide administrative remedies for individuals aggrieved by violations of both the State and Federal public policy outlawing discriminatory conduct. Faced with a motion for summary judgment for failure to file a notice of claim pursuant to County Law § 52, plaintiff Mills argued that the notice requirement was inconsistent with the remedial and deterrent policies of the civil rights laws (see, id., at 309).
Rejecting plaintiff’s argument, the Court determined that the State’s notice requirements were not antithetical to the policy underlying the civil rights laws since notice provisions themselves serve an important State interest — protecting municipalities and public corporations against fraudulent and stale claims (see, id., at 310-311) — and neither the public policy barring discriminatory conduct nor that intended to provide governmental entities xwith timely notice of a claim preempted *407 or outweighed the other. The Court concluded that even though plaintiff was seeking to vindicate the right to be free of discriminatory employment practices — an important public interest embodied in both Federal and State statute — and she alleged that the County engaged generally in unlawful discriminatory practices, "her action seeks relief only for her termination [emphasis in original], which she alleges resulted from her opposition to the county’s discriminatory practices and her race and national origin. The relief she seeks is money damages for her loss of wages and damage to her reputation. Inasmuch as the disposition of plaintiff’s claim was not intended to nor could it directly affect or vindicate the rights of others, her action is properly characterized as one seeking the enforcement of private rights” (id., at 312 [emphasis added]; see also, 423 S. Salina St. v City of Syracuse, 68 NY2d 474, 493, cert denied 481 US 1008; Board of Educ. v New York State Div. of Human Rights [Arluck], 44 NY2d 902, 904, rearg denied 45 NY2d 838; Matter of Saranac Lake Cent. School Dist. v New York State Div. Of Human Rights, 226 AD2d 794; Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., 197 AD2d 276, 278-279, lv denied 84 NY2d 803; Matter of Harder v Board of Educ., 188 AD2d 783, 784; accord, Ruocco v Doyle, 38 AD2d 132, 134; cf., Matter of New York State Labor Relations Bd. v Holland Laundry, 294 NY 480, 495-496).
This reasoning applies with equal force to the instant appeal, which, distilled to its essence, is an action to recover lost wages. While any action brought to enforce a right protected by statute can be said to serve the public interest in some manner, Mills establishes that an action brought to vindicate a right — even a statutorily protected right generally categorized as one in the public interest — does not excuse an applicable notice requirement when the remedy sought inures strictly to the personal benefit of the aggrieved claimants.
The majority’s heavy reliance on Union Free School Dist. No. 6 v New York State Human Rights Appeal Bd. (35 NY2d 371, rearg denied 36 NY2d 807) — decided nearly 10 years before Mills — to support its proposition that the underlying proceeding was one to vindicate a public right is misplaced. In that case, unlike Mills or the instant case, plaintiff’s action truly vindicated the important right to equal treatment in the workplace, which the Court concluded would inure to the benefit of a similarly situated class, by establishing that pregnant women possess rights equivalent to individuals who avail *408 themselves of leaves of absences for other disabilities. That a statutory mechanism provides the method for aggrieved claimants to vindicate their personal economic interest in a recognized right does not transmute an action for alleged underpayment of wages to 41 employees into one to vindicate a public right, a point central to our disagreement with the majority’s holding.
Tracing the genesis of Labor Law § 220 (7) and (8), it is evident that these enforcement provisions were adopted for the purpose of providing workers on the job with an effective administrative remedy, not "to provide a method of enforcing the prevailing rate of wages statute generally” (Matter of Yerry v Goodsell, 4 AD2d 395, 398, affd 4 NY2d 999), which is what the majority holds. The predecessor sections to Labor Law § 220 (7) were penal in nature dictating criminal prosecution of violators but providing no remedy for the exploited worker to recover lost wages (see, Labor Law of 1909, § 3, as amended by L 1916, ch 152; see also, Matter of Gaston v Taylor, 274 NY 359, 361-362; Matter of Yerry v Goodsell, supra, 4 AD2d, at 398). The 1927 amendment to section 220 created the administrative procedure essentially in place today by which workers who claim to be aggrieved because they performed public work at a rate lower than the prevailing wage have the right to file a verified complaint with the Commissioner of Labor for an administrative determination of the prevailing wage rate (see, Labor Law § 220 [7] [originally added by L 1927, ch 563]). Contrary to the majority’s holding, it does not follow from this that every proceeding instituted to adjudicate a prevailing wage claim constitutes an action to vindicate a public interest which justifies discarding the statutory notice of claim requirement governing actions or special proceedings commenced against certain public corporations, such as a BOCES or a Board of Education (accord, Mills, 59 NY2d, at 312, supra). While it has been said that the complaint procedure set forth in Labor Law § 220 (7) "was designed solely for the purpose of enabling the employees on the job to obtain effective relief’ (Matter of Yerry v Goodsell, supra, 4 AD2d, at 399), to construe Labor Law § 220 (7) as the majority does effectively abolishes the prerequisite that a notice of claim be filed in an action for lost wages simply because there is a statutory scheme that invests a public official with investigatory and enforcement powers regarding a matter of public interest.
Moreover, the fact that Education Law § 3813 (1) specifically requires a notice of claim in contract actions places it outside *409 the general rule restricting such requirement to claims against a municipality or public corporation to those sounding in tort (see generally, General Municipal Law §§ 50-e, 50-i; Administrative Code of City of NY § 7-201 [a]; see also, H&J Floor Covering v Board of Educ., 66 AD2d 588). The majority does not advance — nor is there — any valid or rational justification to exempt an action under Labor Law § 220 from this requirement or from the one-year Statute of Limitations (cf., Board of Educ. of Katonah-Lewisboro School Dist. v Board of Educ. of Carmel Cent. School Dist., 174 AD2d 704, 705 [public interest exception does not permit commencement of actions against school district after expiration of one-year Statute of Limitations provided in Education Law § 3813 (2-b)]) given that thé ultimate relief sought by claimants imposes a financial liability on BOCES, a component part of the school district, which financial award does not inure to the benefit of the members of a similarly situated class. The inclusion of a notice of claim requirement in Education Law § 3813 for contract actions is strong evidence of the legislative intent that a notice of claim is a condition precedent to the maintenance of an action by or on behalf of workers to collect purported underpayments of wages, regardless whether the "action” is brought in a court or an administrative tribunal. Certainly, if the Legislature intended to exempt Labor Law § 220 from these statutory prerequisites it would have done so in explicit terms. Thus, we conclude that the Commissioner’s failure to file a notice of claim mandates that the petition be granted.
The majority’s comment that we have ignored the breadth of the enforcement tools available to the Commissioner by suggesting that the limitations periods set forth in Education Law § 3813 (2-b), and the notice of claim requirement of Education Law § 3813 (1), apply to actions seeking to recover underpayments overlooks our point: it is the gravamen of the claim against BOCES — or a Board of Education — that controls the applicability of the statutory prerequisite of a notice of claim or limitations period, not the procedural posture in which the claim was initially pursued. The bald statement in Bucci v Village of Port Chester (22 NY2d 195, 203-204) that the notice of claim requirement has no relevancy to actions brought under Labor Law § 220 (8) contravenes an express statutory requirement by creating a judicially crafted exception without sufficient justification.
Accordingly, the order of the Appellate Division should be reversed.
*410 Judges Simons, Titone and Smith concur with Judge Levine; Judge Ciparick dissents and votes to reverse in a separate opinion in which Chief Judge Kaye and Judge Bellacosa concur.
Order affirmed, with costs.